**BAGBY LAND AND CATTLE COM-PANY, Plaintiff-Appellee,**

v.

**CALIFORNIA LIVESTOCK COMMIS-SION COMPANY, Defendant-Appellant.**

**No. 29841.**

United States Court of Appeals, Fifth Circuit.

March 3, 1971.

Don Studdard, Studdard & Melby, El Paso, Tex., for defendant-appellant.

Charles Anderson, El Paso, Tex., for appellee.

Before JONES, GEWIN and CLARK, Circuit Judges.

GEWIN, Circuit Judge:

The appellee, Bagby Land and Cattle Co., Inc. (Bagby Land), brought this action against appellant California Livestock Commission Company (California Livestock) for damages and attorneys' fees incurred as a result of California Livestock's refusal to pay for 80 head of cattle delivered by Bagby Land to it. California Livestock admitted receipt of the cattle, but asserted in defense an offset and counter-claim for breach of an alleged oral promise by Bagby Land to deliver to California Livestock 2000 head of a specified type of cattle.

After consideration of pleadings and depositions submitted by both parties, the district court granted summary judgment in favor of Bagby Land; it awarded $10,741.56 in damages and $4,000 attorney's fees. California Livestock's counterclaim was dismissed upon the court's finding that the alleged oral contract, if proved, would not be enforceable under the applicable Texas statute of frauds.[1] From the dismissal of its counterclaim, California Livestock appeals; it claims that attorney's fees should not have been granted on summary judgment and that the alleged oral contract was valid under the statute of frauds.[2] We reject each of these contentions and affirm the district court.

The appellee, Bagby Land, buys Mexican cattle in large quantities and brings them across the Texas border for sale. In November of 1968, California Livestock, through its agent, G. B. Barry, began purchasing cattle from Bagby Land for resale to third parties on a commission basis. Barry made daily oral orders for cattle available at the border at the time of the order, and payment was customarily made by draft immediately upon shipment. In November and early December, Barry, acting for California Livestock, purchased approximately 1,600 cattle from Bagby Land in this manner. Of these 1,600 head Bagby Land inadvertently failed to invoice eighty; these cattle were the subject of Bagby Land's suit.

Early in December, Barry allegedly agreed to purchase 1,000 head of cattle from Bagby Land and retained an option for a second 1,000 head, all to be delivered by January 15, 1969.[3] There

---

1. Tex.Bus.Com.Code § 2.201 provides:

   "(a) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

   \*       \*       \*       \*       \*

   "(c) A contract which does not satisfy the requirements of Subsection (a) but which is valid in other respects is enforceable

   (3) with respect to goods for which payment has been made and accepted or which have been received and accepted."

2. Appellants also object to a court order refusing to allow them to take a deposition by written interrogatories of a third party residing in California. We need not consider this contention because our examination of the questions to have been propounded reveal that no new light would have been thrown on the allegations contained in the pleadings and depositions considered by the trial court.

3. The existence of an oral agreement is by no means factually certain. The position of Bagby Land was shown on deposition of Mr. Bagby:

   Mr. Barry told me that he could place, he could sell, 1,000 or 2,000 big steers. And I told Mr. Barry that as I got them, I would sure sell them. But I didn't have them to sell to him.

   In its brief California Livestock asserts: Then around the middle of December Appellant made a verbal agreement or Appellee represented that he would deliver 2,000 head of cattle by January 15, 1969. After this discussion, Appellant resold the cattle to Jimmy Marks of Fat City Cattle Company of Gonzalez, California.

is no contention that any money passed between the parties with respect to the alleged agreement to purchase or the alleged option. After a call to a third party buyer, Fat City Cattle Co. (Fat City), Barry exercised this alleged option and committed himself to sell 2,000 cattle to the third party. There is nothing in the record to indicate that Bagby Land had notice, at the time of the alleged agreement with California Livestock, of its (California Livestock's) intention to make a binding agreement with Fat City.[4] Subsequently, Bagby Land delivered 222 head (of the 2,000) of cattle to California Livestock and then failed to deliver any more. Barry demanded delivery of the remaining 1,778 and refused to pay for the 80 cattle previously received until further delivery was made. Bagby Land refused, and California Livestock settled with Fat City by paying the agreed price of the 80 cattle ($10,741.56) to it and its nominee.

Bagby Land sued for the price of the 80 cattle; California Livestock counterclaimed for the undelivered 1,778. The district court granted summary judgment on Bagby Land's claim on February 4, 1970, but reserved California Livestock's counterclaim for trial. On April 6, 1970, the counterclaim was also dismissed on the ground that it was barred by the applicable Texas statute of frauds.

██ ██ California Livestock seeks to show on several grounds that the admittedly oral contract does not come within the statute of frauds. First, it argues that delivery of 222 of the 2000 head of cattle contracted for was "part performance" of the contract and is sufficient to take the entire contract out of the statute of frauds. We cannot agree. Under Section 2.201(c) (3) of the Texas Business and Commerce Code an otherwise invalid contract "is enforceable * * * (3) with respect to goods * * * which have been received and accepted." Although we have found and are cited to no Texas cases interpreting this recently adopted legislation, we have no hesitancy in holding that the effect of this statute is to validate an oral agreement only as to those goods actually received and accepted by the buyer. While the UCC Comments on this section are not final authority, we treat them as authoritative support for this holding, particularly in the absence of other precedents:

> 2. "Partial performance" as a substitute for the required memorandum can validate the contract only for the goods which have been accepted or for which payment has been made and accepted.
>
> Receipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists. If the court can make a just apportionment, therefore, the agreed price of any goods actually delivered can be recovered without a writing or, if the price has been paid, the seller can be forced to deliver an apportionable part of the goods. The overt actions of the parties make admissible evidence of the other terms of the contract necessary to a just apportionment. This is true even though the actions of the parties are not in themselves inconsistent with a different transaction such as a consignment for resale or a mere loan of money.

California Livestock's acceptance of 222 cattle delivered pursuant to the alleged contract does not, therefore, give rise to the right to have delivery of any

---

Even assuming the truth of the above asserted facts, it is doubtful that California Livestock has shown enough to establish a contractual relationship with Bagby Land. Moreover, we find insufficient support for California Livestock's invocation of the doctrine of equitable estoppel.

4. The most damaging indication of any such notice by Bagby Land that can be gleaned from the testimony on deposition is merely that Bagby Land knew after the alleged agreement was made that Mr. Barry had "obligated himself on down the line."

other cattle for which it orally contracted. Section 2.201(c) (3) does not sustain the contention made. Likewise, California Livestock's failure to allege facts tending to show Bagby Land's knowledge of its intent to act in reliance on the alleged oral agreement, or other pertinent elements to be considered in applying equitable principles, makes unavailable the equitable theories such as fraud, misrepresentation, or estoppel. In this case there has been alleged no unjust enrichment or wrongful inducement by Bagby Land. Moreover, considered in the light most favorable to California Livestock, the evidence indicates no such inequitable action by Bagby Land. California Livestock is barred as a matter of law from recovery under its counterclaim.[5]

California Livestock's second contention is that it was improper for the court to award an attorney's fee in this suit without factual evidence to support its assessment. This contention, too, is without merit. Vernon's Ann. Tex.Stats. Art. 2226 specifically allows reasonable attorney's fees upon a "claim * * * for personal services rendered, labor done, material furnished, * * * or suits founded upon a sworn account or accounts." This is such a suit.[6] Moreover, although the procedure in Texas courts would apparently require proof of reasonable attorney's fees,[7] federal courts are not bound by this procedure in diversity actions.[8] It was entirely permissible for the district court to fix attorney's fees on the basis of its own experience and without the aid of testimony of witnesses.[9]

The judgment of the district court is affirmed.

---

5. Cf. Whitcomb v. Moody, 49 S.W.2d 513 (Tex.Civ.App.1932, err. ref'd) ; Sloan v. Hiatt, 245 Cal.App.2d 926, 54 Cal.Rptr. 351 (1966).

6. See, e. g., Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75, 78 (1958).

7. Himes v. American Home Fence Co., 379 S.W.2d 290 (Tex.1964) ; Golub v. Nelson, 441 S.W.2d 220 (Tex.Civ.App.1969).

8. Sioux County v. National Surety Co., 276 U.S. 238, 244, 48 S.Ct. 239, 72 L.Ed. 547 (1928) ; United States v. United Services Automotive Assn., 431 F.2d 735 (5th Cir. 1970).

9. Id. ; Berkshire Mut. Life Ins. Co. v. Moffett, 378 F.2d 1007, 1013 ; Campbell v. Green, 112 F.2d 143, 144.