In the Matter of AUGUSTIN BROS. CO., Debtor.

WRIGHT GRAIN COMPANY, Appellant,

v.

AUGUSTIN BROS. CO., Appellee.

No. 71–1506.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1972.

Decided May 17, 1972.

Herman Ginsburg, Lincoln, Neb., for appellant.

Paul F. Festersen, Omaha, Neb., for appellee.

Before BREITENSTEIN,* BRIGHT and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

In this appeal brought by a seller of goods, we are asked by the seller to apply equitable principles to permit the enforcement of an oral contract which comes within the express terms of the Uniform Commercial Code Statute of Frauds, U.C.C. § 2–201, Neb.Rev.Stat. § 2–201 (1971). We deny the seller's claim.

Appellant, Wright Grain Company (Seller-Wright or Wright), operates a grain elevator in David City, Nebraska, its principal business being the storage, processing, and sale of corn for use as cattle feed. Wright filed a creditor's claim in a Chapter XI proceeding under the Federal Bankruptcy Act against Au-

* Of the Tenth Circuit, sitting by designation.

gustin Bros. Co. (Buyer-Augustin or Augustin) as a debtor in possession, alleging in substance that Buyer-Augustin had incurred liability to it in the amount of $64,187.95 due to its breach of an oral contract to purchase corn for cattle feed. Buyer-Augustin defended by claiming that the contract entered into by it and Seller-Wright was unenforceable under the Statute of Frauds. In addition, Buyer-Augustin filed a counterclaim seeking refund of part of the advance payments it had made to Seller-Wright for the purchase of corn. The counterclaim alleged the making of advances of $60,360, the receipt of corn against these advances worth $32,477.97, and the existence of a claimed balance of $27,882.03 remaining in the hands of Seller representing an indebtedness still owing the Buyer.

The Referee in Bankruptcy sustained the objection to Seller-Wright's claim, and additionally, granted Buyer-Augustin judgment in excess of $23,000 on its counterclaim. The district court affirmed the Referee's order, except for a minor modification of the amount of the counterclaim due to an error in mathematical computation, and set the award at $23,743.26.[1] Seller Wright brought this timely appeal. For the reasons stated below, we affirm.

The principal contention made by appellant Seller-Wright centers about the advancement of funds by Buyer-Augustin. Seller-Wright contends that it is entitled to retain all of the advance to compensate it for the greater loss it sustained by Buyer-Augustin's repudiation of the contract; notwithstanding the language of the Uniform Commercial Code's Statute of Frauds. In resolving this question, we must examine the findings made by the Referee in Bankruptcy, the district court, and appellant's contentions against the Statute of

Frauds-Sales, U.C.C. § 2–201. We now turn to the factual background.

The genesis of this controversy began in April of 1967 when the owners and controlling shareholders of Buyer-Augustin acquired seventy-five percent of the capital stock of Seller-Wright. Although the two corporations were subject to control by the same shareholders, Wright's manager-employee was permitted to exercise unfettered day-to-day supervision of the company's operations.

Following this transfer of ownership, Seller-Wright and Buyer-Augustin entered into an oral arrangement by which it was agreed that the Seller would acquire any corn available on the market and thereafter supply it to the Buyer at Seller's cost plus four cents per bushel for handling and an additional two cents for processing services (rolling and cracking) if actually rendered.

During the four month period subsequent to acquisition of control of Wright by Augustin, Wright increased its stored corn inventory from less than eighteen thousand bushels to approximately two hundred four thousand bushels. This additional stored corn had been purchased at an average cost of $1.24 per bushel prior to or during August of 1967. In that month the market price of corn fell sharply.

In an effort to minimize any possible losses attributable to this falling market, Wright and Augustin orally agreed that the corn purchased at the $1.24 price should remain in storage until recovery of the market. Meanwhile, Wright would supply Augustin's corn requirements on a last-in-first-out basis from inventory it acquired after August 1967, thereby giving Augustin the advantage of Seller-Wright's lowest acquisition cost.[2]

During that same month, Wright found itself short of working capital due

---

1. The appendix shows a mathematical error in stating the balance at $23,743.21.

2. The record reflects that Buyer-Augustin customarily utilized over a million bushels

of corn per year in its cattle feeding operations. Augustin operated a commercial feed lot in Shelby, Nebraska, on which it fed vast numbers of cattle.

to its substantial cash outlay for corn. To help alleviate this situation, Augustin made two cash advances to Wright totalling $60,360 to pay for corn already delivered by Wright and also for future purchases.

As we have already noted, $32,477.97 of this advance was applied to corn shipments made by Wright and received by Augustin during August 1967. Shortly before October, however, due to financial difficulties, Augustin declined to honor the oral commitment to purchase the corn held in inventory. Wright was forced to liquidate its corn inventory at a lower market price. It sustained a substantial loss both as compared to the oral contract price it would have received and as compared to its acquisition cost.

In the Bankruptcy Court, the Referee determined that the oral arrangement or agreement under which Buyer-Augustin agreed to buy all of its corn requirements from Seller-Wright at the Seller's cost, plus additions, fell within the Statute of Frauds, and as such, was unenforceable except as to the quantity of corn to which the remaining $27,882.03 of the advances could apply.

The Referee determined that this balance would purchase 21,783 bushels of corn at the $1.28 price specified in the oral agreement (acquisition cost of $1.24 plus $.04 handling). The Referee then determined that Seller-Wright was entitled to damages only for Buyer-Augustin's failure to take this number of bushels of corn and directed the balance of the fund, after deduction of these damages, be refunded to Augustin.

Since the parties conceded that Seller-Wright's loss on liquidation amounted to $.19 per bushel (Wright was forced to liquidate its corn at $1.09 per bushel), the judgment as finally entered by the district court permitted the Seller to retain the sum of $4,138.77 (21,783 bu. x $.19 loss) and required the remainder of $23,743.26 to be repaid to Augustin. The refund was computed as follows:

| | |
|---|---|
| Balance of advance in Seller's hands | $27,882.03 |
| Less damages for part of contract not deemed within the Statute of Frauds | 4,138.77 |
| | $23,743.26 |

## I.

The Statute of Frauds bars enforcement of the overall oral contract between the parties which called for Augustin to purchase all of Wright's inventory of corn. The Statute of Frauds does, however, permit partial enforcement of this contract under the doctrine of part performance.

The Statute, U.C.C. § 2–201, as is here pertinent, provides:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars [$500] or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

\* \* \* \* \* \*

(3) *A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable* \* \* \* *(c) with respect to goods for which payment has been made and accepted or which have been received and accepted* \* \* \*. (Emphasis supplied.)

Official Comment No. 2 to U.C.C. and Neb.Rev.Stat. § 2–201 reads in pertinent part:

2. "Partial performance" as a substitute for the required memorandum can validate the contract only for the goods which have been accepted or for

which payment has been made and accepted.

Receipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists. If the court can make a just apportionment, therefore, the agreed price of any goods actually delivered can be recovered without a writing or, if the price has been paid, the seller can be forced to deliver an apportionable part of the goods. The overt actions of the parties make admissible evidence of the other terms of the contract necessary to a just apportionment. This is true even though the actions of the parties are not in themselves inconsistent with a different transaction such as a consignment for resale or a mere loan of money.

 Comments contained in the Uniform Commercial Code, while not necessarily binding upon the courts, may be relied upon as an aid in construing the statutory language. Bagby Land & Cattle Co. v. California Livestock Commission Co., 439 F.2d 315, 317 (5th Cir. 1971). The language of the statute, and of the official comment, makes it clear that part performance of an oral contract for the sale of goods that is capable of apportionment is enforceable only as to that portion that has been either fully or partially performed.

 We agree with the conclusion of the Referee and the district court that enforcement of an oral contract for goods in which an advance payment has been made by the buyer is limited to that quantity of goods which the advance payment would buy at the market price. See Bagby Land & Cattle Co. v. California Livestock Commission Co., supra, 439 F.2d 315; Spiering v. Fairmont Foods Co., 424 F.2d 337 (7th Cir. 1970); 1 R. Anderson, Uniform Commercial Code, § 2–201:43; C. Corman, The Law of Sales under The Uniform Commercial Code, 17 Rutger's L.Rev. 14 (1962); Williston, The Law of Sales and The Proposed Uniform Commercial Code, 63 Harv.L.Rev. 561 (1950).

## II.

Seller-Wright does not quarrel seriously with this construction of the U.C.C. Statute of Frauds, rather it claims to be entitled as a matter of equity to retain the remaining advance payment left in its hands in order to recoup part of the loss it sustained upon liquidation of the 200,000 bushels of corn which it had acquired on the basis of the oral contract with Buyer-Augustin. The bankruptcy court found that its overall loss on this basis would exceed $38,000, an amount substantially greater than the balance left in Seller-Wright's hands. Wright places reliance upon § 1–103 of the Uniform Commercial Code, which reads:

Unless displaced by the particular provisions of this act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

In Chicago Roller Skate Manufacturing Co. v. Sokol Manufacturing Co., 185 Neb. 515, 517, 177 N.W.2d 25, 26 (1970), the Nebraska Supreme Court in a somewhat different context, noted:

The Uniform Commercial Code contemplates that it shall be supplemented by existing principles of law and equity.

Appellant would have us ignore the Statute of Frauds in this situation in order to apply principles of restitution to justify its retention of the advance payment for corn for which it had made no delivery. By analogy, appellant refers to cases which hold that a vendee in a land contract and a purchaser of personal property may not recover advance payments made under an oral contract within the Statute of Frauds in the face of the vendor's willingness and ability to perform. See Annot., 169 A.L.R. 187 (1947). It has been held, however, that the part performance doctrine of land contracts is not applicable to other Stat-

ute of Frauds problems. *See* Lee v. Jenkins Brothers, 268 F.2d 357, 373 (2d Cir.), cert. denied, 361 U.S. 913, 80 S.Ct. 257, 4 L.Ed.2d 183 (1959).

The weakness of appellant's argument as applicable to the U.C.C. Statute of Frauds is further highlighted by a comparison of the pre-code Statute of Frauds as embodied in the Uniform Sales Act with the provisions of the Uniform Commercial Code which has supplanted it. The Uniform Sales Act § 4(1), which was in effect in Nebraska prior to the adoption of the Uniform Commercial Code, made unenforceable an oral contract to sell or sale of any goods of the value of $500 or upwards unless the buyer, among other things, "give something in earnest to bind the contract or in part payment * * *." *See* Neb.Rev.Stat. § 69.404 (1943) [now repealed by U.C.C.]. Under this provision of the Sales Act, appellant's argument would be well taken. *See* W. Jaeger, Williston on Contracts § 565 (3d ed. 1967); Restatement of Contracts §§ 199, 205 (1943). In fact, under the Sales Act, Appellant could retain the entire balance of the advance payment and recover additional damages for breach of the entire contract to purchase the corn.

■ Thus, we see that the equitable principle of part performance by the Buyer as incorporated in the Sales Act had the effect of taking an oral contract for sale of goods completely out of the operation of the Statute of Frauds. But this provision was substantially changed by the enactment of the Uniform Commercial Code. *See* 2 Corbin, Contracts § 482, at 643; Williston, *supra*, 63 Harv. L.Rev. 561; Note, A Comparison of the Statute of Frauds Sections of the Uniform Sales Act and Uniform Commercial Code in Pennsylvania, 58 Dick.L.Rev. 373 (1954). A more limited equitable principle is incorporated into this new Statute of Frauds governing sales. It permits enforcement of an oral contract upon which part performance by advance payment has been made, but only to the extent of the apportionable part of the goods that the advance payment

would purchase. In light of the purposes behind these changes, we cannot find viable in the Uniform Commercial Code principles contained in the rejected provision of the Uniform Sales Act Statute of Frauds. The contention pressed by appellant is inconsistent with the obvious intent of the Uniform Commercial Code provisions to change the rule of law applicable to part performance of oral contracts of sale. We therefore conclude that the Buyer by making a part payment, and the Seller by accepting that part payment, made an enforceable contract only as to that quantity of goods that could have been purchased by that part payment.

Under this principle, Wright could have called upon Augustin to take delivery of an additional 21,783 bushels at $1.28 per bushel. When Augustin repudiated the contract, Wright's right to damages was limited to that part of the contract recognized as enforceable by the express provisions of the Statute of Frauds contained in the Uniform Commercial Code.

### III.

Appellant alternatively argues that the Referee in Bankruptcy and district judge erred in limiting the damages to the number of bushels of corn represented by the balance of the advance payment of $27,882.03 rather than allowing damages for breach of contract measured by the number of bushels which could be purchased by the full advance payment of $60,360.

This contention is without merit. True, the overall agreement includes the delivery of goods and payment for goods prior to the breach in question. No question is raised here concerning deliveries of corn made prior to the advance. That part of the contract had been fully executed and gave rise to no action for damages. Similarly, upon receipt of the advance payment, Wright applied the part payments against past and future purchases of corn at the current market price which represented the acquisition price for this later acquired corn. As

we have already noted, the parties agreed that in order to minimize the loss potential, the Seller would obtain corn at the current low market price and deliver that corn to the Buyer at the Seller's acquisition cost plus the agreed markup. The parties agreed that the Seller should retain the higher priced corn in its inventory in the hope of avoiding a loss should the market price of corn go up. No damages can be attributed to this substituted performance agreed to by the parties. Thereafter, Augustin applied for relief from its debts under Chapter XI of the Bankruptcy Act and became unable to fulfill its commitments to purchase any of the stored corn at Wright's acquisition cost, which as we have noted exceeded the October 1967 market price for corn.

The Buyer breached its contract when it advised Seller it would not take delivery of any corn at the contract price. At this point Buyer became liable for damages for repudiation of the contract pursuant to U.C.C. Sales § 2–708(1).[3]

The trial court correctly applied this rule of damages to the apportioned part of the corn contract which was still not fully performed, and which the Bankruptcy Court determined to have been breached. The Referee and trial judge construed that refusal of Buyer-Augustin to take delivery as a breach of the original agreement of the parties. Appellant does not quarrel with this determination and we are also bound to construe the breach as a breach of the original oral agreement to the extent of its enforceability.

3. Section 2–708 (Neb.Rev.Stat. § 2–708) reads as follows:
 (1) Subject to subsection (2) and to the provisions of this article with respect to proof of market price (section 2–273), the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this article (section 2–710), but less expenses saved in consequence of the buyer's breach.

In summary, we find no basis under the Uniform Commercial Code to permit the Seller to retain a greater portion of the advance payment made by the Buyer than that authorized by the district court.

Accordingly, we affirm.

(2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this article (section 2–710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.