724 F.2d 696
 37 UCC Rep.Serv. 673
 CROCKER NATIONAL BANK, CREDIT ALLIANCE CORPORATION, Appellant,
Leasing Service Corporation,
v.
CLARK EQUIPMENT CREDIT CORPORATION, Appellee,
Doyle-Lunstra Sales Corporation.
LITTON INDUSTRIES CREDIT CORPORATION, a Delaware Corporation,
v.
DOYLE-LUNSTRA SALES CORPORATION, a South Dakota Corporation;
Clark Equipment Credit Corporation, a Michigan
Corporation, Appellee.
CROCKER NATIONAL BANK, CREDIT ALLIANCE CORPORATION, and
Leasing Service Corporation, Appellees,
v.
CLARK EQUIPMENT CREDIT CORPORATION, Appellant,
Doyle-Lunstra Sales Corporation.
LITTON INDUSTRIES CREDIT CORPORATION, a Delaware Corporation, Appellee,
v.
DOYLE-LUNSTRA SALES CORPORATION, a South Dakota Corporation;
Clark Equipment Credit Corporation, a Michigan
Corporation, Appellant.
 Nos. 83-1268, 83-1269.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 10, 1983.
Decided Jan. 11, 1984.
Rehearing Denied Feb. 6, 1984.
 
 Steven W. Sanford, Cadwell, Sanford & Deibert, Sioux Falls, S.D., for appellant.
 Woods, Fuller, Shultz & Smith P.C., and Stuart L. Tiede, Sioux Falls, S.D., for Clark Equipment Credit Corp.
 Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.
 LAY, Chief Judge.
 
 
 1
 Doyle-Lunstra Equipment Company (DLE) was a corporation located in Sioux Falls and Rapid City, South Dakota, engaged in retail sales, rental, leasing, and servicing of heavy equipment. Clark Equipment Credit Corporation (Clark) was DLE's inventory financier. Clark advanced DLE monies to acquire inventory; in return, Clark was given a floating security interest in all the inventory of DLE (presently and after acquired inventory and proceeds). Clark filed a financing statement with the South Dakota Secretary of State covering the inventory and proceeds.
 
 
 2
 Credit Alliance Corporation and its sister corporation, Leasing Service Corporation (Leasing), are in the equipment financing business. After a customer bought or leased a piece of equipment from DLE, DLE would sell the conditional sales contract or lease (chattel paper) to Credit Alliance or Leasing. Litton Industries Credit Corporation (Litton) is also in the equipment financing business and is engaged in financing sales of equipment by DLE similar to those of Credit Alliance and Leasing. Financing statements were filed by Credit Alliance, Leasing, and Litton on some, but not all, of the chattel paper.
 
 
 3
 In 1980, DLE became financially troubled. Several of DLE's shareholders drafted a reorganization plan. The plan involved transferring some of DLE's inventory to a new entity--Doyle-Lunstra Sales Corporation (DLS). DLS was incorporated on February 11, 1981. Clark, pursuant to an agreement with several of DLS's future directors, obtained and filed a new financing statement naming DLS as debtor and covering substantially the same collateral as its earlier financing statement with DLE.
 
 
 4
 In late 1980 and early 1981, DLE obtained the consent of its various creditors to the transfer of its inventory to DLS. Credit Alliance, Leasing, and Litton contend that their consent to the transfer was conditioned on their maintaining priority in the collateral in which they had security interests. Clark contends that because it filed first after the DLE-DLS reorganization, it has priority in all DLS's inventory and chattel paper.
 
 
 5
 In July 1981, DLS filed a petition under Chapter 11 of the Federal Bankruptcy Code. In the course of the proceedings, Clark asserted priority of its security interest on items of DLS inventory claimed by Credit Alliance. Credit Alliance and Leasing sought a declaratory judgment as to their priority on the items of inventory. Clark filed a counterclaim. In a companion case Litton filed a complaint seeking declaratory relief against the same defendants (Clark and DLS) as to other items of inventory.
 
 
 6
 The district court accorded Credit Alliance priority on nine of the ten units in dispute between it and Clark. Credit Alliance claimed seven of the ten items as repossessions on prior chattel paper purchases; two of the ten items as collateral for perfected security interests in the items themselves; and one item as a repossession on a lease in which Credit Alliance had a security interest. The court found that Credit Alliance had priority on the repossessed items of inventory over Clark as an inventory secured creditor under the Uniform Commercial Code (UCC) adopted in South Dakota,[1] but found that, due to the failure of Credit Alliance to file a financing statement after repossession of a Hough Wheel Loader, Clark was entitled to the proceeds on that piece of equipment. The court also found that Credit Alliance had priority over Clark as to the other three pieces of equipment in dispute. Credit Alliance appeals from the court's award of the proceeds of the Hough Wheel Loader to Clark. Clark cross appeals from the court's decision as to the remaining nine pieces of inventory.
 
 
 7
 Litton was awarded priority as a secured creditor on two items of inventory. One of the items, an Eco-Logger, is claimed by Litton as a repossession on a prior chattel paper purchase. The other item, a hot plant, is claimed as collateral of a lease purchased by Litton from DLE. Clark has appealed from the court's finding that Litton's security interests in the items had priority over Clark's security interests.
 
 
 8
 We affirm the judgment of the district court in both appeals.
 
 Discussion
 
 9
 Clark makes two arguments that are relevant to the seven items claimed by Credit Alliance as repossessions on prior chattel paper purchases and to the two items awarded to Litton. Clark's first argument is that the chattel paper transferees are not "unpaid" and thus do not qualify for the priority afforded by UCC Sec. 9-306(5). Clark's second argument is that the security agreements of Credit Alliance, Leasing, and Litton are with DLE not DLS. Therefore, Clark argues, as the first creditor to file after the DLE-DLS transformation, it has priority in all the contested items of equipment. The court will address these two general arguments before addressing the more specific arguments of the parties relating to individual pieces of equipment.
 
 
 10
 UCC Sec. 9-306(5) states in substance that, if the chattel paper is sold and the underlying goods returned, an "unpaid transferee of the chattel paper has a security interest in the goods against the transferor." Id. at (5)(b). Clark argues that Credit Alliance, Leasing, and Litton are not unpaid transferees of chattel paper because, after repossessing the various units of underlying collateral, they exerted ownership over them by having DLE sign "dealer trust letters" stating that ownership of the repossessed items was with the chattel paper holders. Clark argues that this amounts to a disposition of the collateral which, in effect, "pays" the chattel paper holders, removing their unpaid transferee status. Alternatively, Clark contends that the chattel paper holders failed to dispose of the collateral within a reasonable time following repossession which operated as "satisfaction" of the chattel paper. It is argued that this also removes the unpaid transferee status of the holders. The chattel paper holders contend that the trust letters merely evinced their security interests in the repossessed goods.
 
 
 11
 Section 9-306(5) provides for the situation where the seller or chattel paper holder repossesses the goods underlying the chattel paper. That section anticipates that the chattel paper holder will retain a security interest in the goods even while the goods rest with the seller and are subject to resale. While it is possible that DLE and the chattel paper holders intended to transfer ownership of the underlying collateral to the chattel paper holders, their actions correspond more closely to, and the evidence supports, a transaction such as that provided for in Sec. 9-306(5). We find that the chattel paper holders and DLE intended for the former to have a security interest in the goods, not an ownership interest. We therefore uphold the finding of the district court that the chattel paper holders were unpaid transferees.
 
 
 12
 Clark argues that the security interests and financing statements of the chattel paper holders concerned DLE as the debtor, not DLS. The continuation of the security interests of DLE's creditors depended on an agreement between DLE's old creditors and DLS. Clark submits that DLS agreed to let Clark file first thereby giving it priority in all of DLS's inventory. Credit Alliance argues that the reorganization of DLE into DLS was merely a name change that in no way misled Clark into advancing more credit to DLS. Credit Alliance also submits that the creditors of DLE conditioned their assent to the reorganization on the creditors retaining their relative priorities as secured creditors. The district court found that the transfer from DLE to DLS was little more than a name change that did not necessitate the filing of a new financing statement. The court also found that DLS agreed to the continuation of priorities claimed by DLE's creditors. These findings are not clearly erroneous. Creditors of DLS would not be misled by a financing statement listing DLE as debtor. Either name appearing on a financing statement would be sufficient notice to creditors that the collateral described was subject to a prior security interest. Also, there is substantial evidence that the continuation of priorities was discussed and agreed to by DLS. Thus, the reorganization did not disturb the existing priorities of DLE's creditors.[2]
 
 The Hough Wheel Loader
 
 13
 Prior to 1981, DLE sold a Hough Wheel Loader to its customer Joe Horner. This sale cut off Clark's security interest as an inventory creditor in the wheel loader. However, Clark had a security interest in the chattel paper (as proceeds) generated by the sale. DLE sold the chattel paper to Credit Alliance. Horner subsequently defaulted on his payments and Credit Alliance repossessed the item. Credit Alliance returned the wheel loader to DLE's inventory taking from DLE a "dealer trust letter" acknowledging Credit Alliance's interest in the unit. As in the other items of contested inventory, Credit Alliance claims that it retained a security interest in the wheel loader when the unit was returned to DLE's inventory and that this security interest had priority over the security interest of Clark (which reattached when the inventory was returned, UCC Sec. 9-306(5)(a)). The fundamental difference between the other items of inventory previously discussed and the wheel loader is that Credit Alliance filed a financing statement on the other repossessed items but did not file on the wheel loader.
 
 
 14
 Subsection (d) of Sec. 9-306(5) warns that the interest of the transferee must be perfected "for protection against creditors of the transferor." Clark contends that it is a creditor of the transferor and therefore Credit Alliance was required to perfect (by filing or possession) its security interest in the unit itself in order to be "protected." The district court agreed with this argument and held that Clark had priority over Credit Alliance's unperfected security interest in the wheel loader.
 
 
 15
 The purpose of Sec. 9-306(5)(d) is to protect the transferor's creditors who are unaware of the chattel paper sale and the repossession of the inventory. By requiring the chattel paper holders to file on repossessed goods, creditors of the transferor are protected from relying on goods in the inventory of the transferor that are subject to a prior security interest (that of the transferee). Commentators on the Code insist, however, that an inventory financier such as Clark is not a "creditor" of the transferor within the meaning of Sec. 9-306(5)(d). See, B. Clark, The Role of Secured Transactions under the UCC, Sec. 10.2; G. Gilmore, Security Interests in Personal Property, 738-39.
 
 
 16
 Although interpretation of the Code by knowledgeable commentators is often helpful in ascertaining the meaning of a provision, such interpretation cannot prevail over the plain wording of the statute when the two are in conflict. Cf. In re Augustin Brothers Co., 460 F.2d 376 (8th Cir.1972). In the instant case, this court cannot reconcile the plain language of the statute with the interpretation given by the commentators. Section 9-306(5) refers to "creditors" of the transferor; the provision does not exempt any type of creditor from its protection. Clark is an inventory creditor of DLE and as such may properly demand that Credit Alliance file in order to maintain its priority in the wheel loader. Credit Alliance did not file. Thus, Credit Alliance's security interest was subordinate to Clark's. We therefore affirm the district court's award of priority in the wheel loader to Clark.[3]
 
 
 17
 We also note the deference to be shown by a reviewing court to the district court's interpretation of previously uninterpreted state law. See, e.g., Bishop v. Wood, 426 U.S. 341, 345-46, 96 S.Ct. 2074, 2077-78, 48 L.Ed.2d 684 (1976); Red Lobster Inns of America, Inc. v. Lawyers Title Insurance Corp., 656 F.2d 381, 387 (8th Cir.1981). While this deference is not unbounded, see Luke v. American Family Mutual Insurance Co., 476 F.2d 1015 (8th Cir.), cert. denied, 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973), it is appropriate where, as here, there is no clear error or abuse of judicial discretion.
 
 Impact Crusher
 
 18
 Credit Alliance claims that it made a loan to Tiger Corporation (not a party to this suit) and took in return a security interest in a lease of an impact crusher between Tiger and Pacer Corporation. Clark contends that the lease between Tiger and Pacer was a sham and that the crusher was actually inventory of DLS subject to Clark's floating security interest. The district court found that the crusher had never been inventory of DLS and, consequently, Credit Alliance was entitled to the unit and the proceeds of the lease.
 
 
 19
 It is not the responsibility of this court to reweigh the evidence presented at trial. The validity of the Tiger-Pacer lease is a finding of fact that is not clearly erroneous. We, therefore, affirm the district court on this issue.
 
 Eco-Logger and hot plant
 
 20
 We now turn to Clark's appeal concerning Litton. Involved are two separate inventory items: (1) an "Eco-Logger" and (2) a hot plant with a generator and dust collector. When each of the units was sold by DLE, Clark obtained a security interest in the chattel paper as proceeds generated by the sale.[4] Litton purchased the chattel paper generated by both sales from DLE. The Eco-Logger was eventually repossessed and returned to the inventory of DLE. The hot plant remained with the lessee.
 
 
 21
 As we have discussed above, Clark's security interest in the chattel paper as proceeds was subordinate to the interest of the transferee of chattel paper (Litton). UCC Sec. 9-306(5)(b). In support of its claim of priority on the Eco-Logger, Clark once again argues that detention of the underlying collateral by the chattel paper transferee serves to "pay" the transferee. The district court found that Litton was at all times an unpaid transferee of chattel paper. As we have discussed above in relation to Credit Alliance, we find no error in the court's reasoning on this issue.
 
 
 22
 On March 21, 1979, DLE leased a Model 81 hot plant to Pacer Corporation. In April, Litton purchased the lease from DLE. The district court found that Litton took possession of the lease and perfected a security interest in it. The court concluded that Litton, as an unpaid transferee of chattel paper who took possession of the paper in the ordinary course of its business, had a prior security interest in the hot plant to that of Clark whose claim to the property was merely as proceeds. We find no error in the findings of the court and affirm its conclusions as to the hot plant as well as the Eco-Logger.
 
 
 23
 Judgment in No. 83-1268 and 83-1269 are affirmed.
 
 
 
 [1]
 South Dakota has enacted provisions of the Uniform Commercial Code in Chapter 57 of the South Dakota Codified Laws, Section A. We will cite to sections of the UCC without the S.D.C.L. 57A prefix
 
 
 [2]
 The two items of inventory claimed by Credit Alliance as collateral for perfected security interests in the items themselves were subject also to security interests of Clark. Prior to the DLE-DLS reorganization, Clark agreed with Credit Alliance to subordinate Clark's security interests in the items to the security interests of Credit Alliance. On appeal, Clark argues that these subordination agreements did not survive the reorganization and, thus, Clark's priority as secured creditor in the items is reestablished. Our conclusion that the district court was correct in finding that the reorganization did not affect the relative rights of the secured parties also supports the district court's finding that the subordination agreements survived the reorganization. The court was correct, therefore, in awarding priority in these two items to Credit Alliance
 
 
 [3]
 As author of this opinion, I dissent on this point. Though extrinsic interpretational aids may not supersede the clear and unambiguous language of a statute, they are useful in divining the intended meaning of the statute. This is particularly true where, as here, one of the interpreters was one of the original drafters of the relevant document. See generally G. Gilmore, Security Interests in Personal Property
 In the instant case, Clark was put on notice, through Sec. 9-308, of the vulnerability of the proceeds to a supervening security interest. When DLE sold the chattel paper to Credit Alliance, Credit Alliance obtained priority in the proceeds. The default of the buyer of the underlying collateral should not affect the relative priority between Clark and Credit Alliance. Modern commercial practice requires that the inventory financier, the party most able to guard against the risk, be exposed to the consequences of a sale of the proceeds in which it has a security interest and a subsequent default by the buyer of the underlying collateral. If this risk were not on the inventory financier, chattel paper purchasers such as Credit Alliance would be forced to go through elaborate and expensive auditing procedures to insure the security of their credit extensions. The increased risk of the subordination of those security interests would have serious and adverse repercussions to all dealers seeking commercial financing. See Bank of Beulah v. Chase, 231 N.W.2d 738, 745 (N.D.1975).
 
 
 [4]
 When DLE sold the Eco-Logger out of its inventory, Clark received approximately $78,000 from the sale. Litton argues that this satisfied the underlying obligation of DLE to Clark; consequently, Clark no longer had a security interest in the unit or its proceeds. Clark correctly points out, however, that as an inventory financier, it had a security interest which "floated" over all of DLE's inventory and proceeds. The underlying obligation of a seller to its inventory financier is not satisfied item by item. Payment on the debt owed to Clark by DLE reduced Clark's security interest in the inventory collectively, not in any one piece of inventory