**COVE VALLEY PACKERS, INC.**

v.

**PILGRIM FRUIT COMPANY, Inc.**

Civ. A. No. 68-2.

United States District Court
D. Massachusetts.
March 13, 1969.

Andrew Aloisi, Aloisi & Aloisi, Boston, Mass., for plaintiff.

Norman Coplan, New York City, Francis J. Ulman, Boston, Mass., for defendant.

## OPINION

FRANCIS J. W. FORD, District Judge.

This is an appeal from a reparation order of the Secretary of Agriculture, issued under the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a–499s, directing respondent to pay to complainant $1500 with interest from August 1, 1966. In accordance with the statutory provision, 7 U.S.C. § 499g(c), the case was tried de novo, with the findings and order of the Secretary being introduced in evidence.

Cove Valley Packers, Inc., is a California corporation engaged in shipping fresh fruit. Pilgrim Fruit Company, Inc., is a corporation doing business in Massachusetts and licensed under the Act as a commission merchant and dealer in fresh fruit and produce. On June 16, 1966 Cove Valley sold to Pilgrim through Sid Gruber of John Slavich, Jr., Co., a broker acting as agent for both parties, a carload of 990 crates of Santa Rosa plums, f. o. b. Orange Cove, California at a price of $4,185.

A U. S. Department of Agriculture inspection was made of the plums while they were being loaded at Orange Cove. The plums were certified as grading U.S. No. 1 and as being free, without any decay, from defects and within tolerance.

The car arrived in Boston on Friday, June 24, 1966. The plums were inspected by a commercial inspection agency, and thereafter, at the request of one Freni, treasurer of Pilgrim, by the Department of Agriculture. This inspection was confined to the upper two layers of the nine or ten layers packed in the car. The inspector's report indicated the condition of the plums as "decay most crates 2 to 9%, some 33 to 35%, some none, average 10% Blue Mold rot and Rhizopus Rot in advanced stages * * * meets quality requirements but fails to grade U. S. No. 1 only account of condition." The interior temperature of the car at the doorway was reported as "top 55° F, bottom 45° F."

On Saturday, June 25, Freni reached Gruber by telephone in New York.

Freni told Gruber he would not accept the plums and pay the full purchase price, and would only handle the plums for the account of Cove Valley. He requested Gruber to notify Cove Valley of his decision. Gruber did so on the same day. Higham, president of Cove Valley, told Gruber not to permit Pilgrim to handle the plums for Cove Valley's account, but to turn them over to Giovino Bros., a Boston firm of shippers' agents and representatives, to handle to mitigate the loss.

Meanwhile, on June 25, Pilgrim, without any authority from Cove Valley, notified H. Harris & Co., Inc., which conducts a fruit auction at Boston, to sell the car of plums for Cove Valley's account, Pilgrim Fruit Company, Inc., Agents. The car was so listed by Harris for its Monday auction. Late on Saturday afternoon, after Gruber had informed Pilgrim of Higham's instructions, the order to Harris was withdrawn and the car turned over to Giovino Bros.

Giovino Bros. had already listed for sale at the Monday, June 27, auction another carload of plums shipped by Cove Valley which had arrived in Boston off condition. It did not list the car turned over by Pilgrim until the next auction on Wednesday, June 29. The plums were sold at that auction for an average price of $3.85 per crate. The net proceeds of the sale after deduction of a commission to Giovino Bros. was $2,673.47. This was applied to the f. o. b. invoice price of $4,185.00, leaving a deficiency of $1,511.53.

By letter on June 29, Cove Valley informed Pilgrim of the action it was taking to dispose of the plums. On July 8 Pilgrim's president, Joseph Aloisi, replied to this letter, stating, "The condition of this load was the reason for rejection, therefore we will not accept any responsibility as to the amount of loss which will occur." On July 8, Cove Valley demanded payment from Pilgrim of the $1511.53 deficiency. This was not paid and Cove Valley thereafter brought proceedings before the Secretary of Agriculture on a claim for $1500.[1]

Under the Act a dealer is liable for rejecting without reasonable cause any shipment of a perishable agricultural commodity which he has bought or contracted to buy. Since this was an f. o. b. transaction, the buyer assumed all risk of damage and delay in transit not caused by the seller, provided the produce was loaded on the car in suitable shipping condition, that is, in a condition which, if the shipment is handled under normal transportation service and conditions will assure delivery without abnormal deterioration at the contract destination agreed upon between the parties. 7 C.F.R. § 46.43(i) and (j).

Undoubtedly the plums were in a deteriorated condition on arrival in Boston. The inspection certificate at the point of origin shows that the plums were then in good condition. There was no evidence to indicate they were not suitable for shipment under normal transportation conditions, or to show that the deterioration was caused in any way by the seller. The temperature of the car on arrival (48° F to 52° F) was abnormal, being well in excess of the proper temperature for shipment of plums (35° F to 45° F). On the evidence the only conclusion is that the deterioration of the plums was due to abnormal conditions while in transit. This was part of the risk assumed by Pilgrim as buyer, and under the provisions of the Act, Pilgrim was not entitled to reject the shipment.

1. Under 7 U.S.C. § 499f, where the amount claimed as damages does not exceed $1500, no hearing need be held and the parties may submit their proof in the form of depositions and verified statements of fact. There seems to be no reason why it was improper, as defendant contends, for plaintiff to claim $1500 and not $1511.53. The statute makes the amount claimed, and not some amount which could have been claimed, the determining factor. Plaintiff was entitled to waive a few dollars of the total deficiency which would have technically barred it from taking advantage of the procedure afforded for enforcing smaller claims.

Pilgrim, however, contends that it did not reject the shipment. In its version of the facts, which differs somewhat from that found above by the court, Freni did not reject the plums but was merely putting out "feelers" to see if Cove Valley would reduce the price. But even Freni's statement that he would take the plums if the price were reduced twenty-five cents a crate was impliedly a rejection of the plums on the original contract terms. Pilgrim's action in listing the plums with Harris for sale for the account of Cove Valley clearly indicates that Pilgrim considered the plums as having been rejected by it. Finally, Aloisi's letter of July 8 expressly sets out Pilgrim's description of its own conduct as a rejection of the plums.

The defendant further contends that Cove Valley and Giovino Bros. as its agent, in their handling of the car after rejection failed to take proper steps to mitigate damages. Basically the argument is that if the plums had been sold at auction on Monday, June 27, they would have brought a higher price than they did on Wednesday, June 29. This rests, however, on a purely speculative assumption as to price. Giovino Bros. had two carloads of plums to dispose of at auction, one of them already listed for the Monday auction. It was certainly reasonable to suppose that adding another carload on Monday might well result in a lower price for both cars, and that the best price for all could be obtained by holding the second car until the Wednesday auction. In fact, the plums sold on Wednesday brought a higher average price than those sold on Monday. (Of course, this fact does not give much help, since there was no evidence as to the comparative condition of the plums sold on Monday.) There was evidence that the plums involved here had by Wednesday further deteriorated from their condition on Friday. But since no inspection was made between Friday and Monday, there is no evidence as to the exact condition of the plums on Monday, or of what effect this would have had on the price obtained for the plums. No one can say with even any degree of probability that a sale on Monday of this carload of plums would have brought a higher price. On the evidence the court finds that the disposal of these plums by Giovino Bros. was handled in good faith and in a commercially reasonable manner.

Plaintiff here is entitled to recover from defendant damages in the amount of $1500 with interest from August 1, 1966 together with an attorney's fee (7 U.S.C. § 499g(c)) in the amount of Three Hundred Dollars ($300).

Judgment will be entered for plaintiff in accordance herewith.

