**BROOKSIDE FARMS**

v.

**MAMA RIZZO'S, INC.**

**Civ. A. No. G–94–519.**

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 27, 1995.

Ramon Gustave Viada, III, Barry Abrams, Abrams Scott & Bickley, Houston, TX, for Brookside Farms.

Brian E. Bro, Bro & Ploch, Houston, TX, for Mama Rizzo's Inc.

## ORDER

KENT, District Judge.

This is a breach of contract dispute in which Plaintiff Brookside Farms ("Brookside") alleges that Defendant Mama Rizzo's Inc. ("MRI") breached its contract with Brookside to purchase 91,000 pounds of fresh basil leaves. Before the Court now are Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment. For the reasons discussed below, the Court finds that Defendant's Motion is **DENIED** and Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**.

### Background

On October 13, 1993, Brookside Farms and MRI entered into a requirements contract for the sale of fresh basil leaves from Brookside to MRI. Under the contract, MRI agreed to buy a minimum of 91,000 pounds of fresh basil leaves for a one-year term. Delivery was to be made daily, five days per week, in lots ranging from a minimum of 350 pounds to a maximum of 800 pounds. MRI agreed to pay for the basil it accepted within fifteen days of delivery date.

The price for the basil leaves under the contract was seasonally based, with one price applicable during the domestic growing season, and a higher price applicable during the non-growing season, when Brookside would look to Mexican growers to supply the basil it would need to fulfill its obligations under the contract. The original price for basil delivered during the domestic growing season—between June 1 and September 30—was $3.80 per pound; the original price for basil delivered during the non-growing season—October 1 to May 31—was $5.00 per pound.

It is undisputed that Mike Franklin, the vice-president of MRI, requested Wayde Burt, Brookside's general partner, to remove additional parts of the stems of the basil leaves, a task not specifically required under the original contract. Brookside agreed to do this work in exchange for a $0.50 per pound increase for the remainder of the contract term. The undisputed testimony shows that, because the original contract contained a clause forbidding oral modification, Franklin promised to make a notation of future price changes on MRI's copy of the original contract. The new price terms were also reflected on MRI's internally-generated purchase orders, Brookside's invoices, and MRI's payment checks. Between October 27, 1993, and November 16, 1993, MRI issued twelve separate purchase orders for shipments of basil at $5.50 per pound, and Brookside filled each order and invoiced MRI at the new price.

Between November 17, 1993, and January 9, 1994, MRI discontinued its order of basil leaves, and Brookside reduced its purchase of basil from its Mexican suppliers as a result. Consequently, Brookside was forced to pay higher prices for its supply of Mexican basil leaves when MRI resumed its orders under the contract. Two price modifications in the contract then followed in close sequence. Initially, Franklin and Burt agreed that MRI would pay $6.23 per pound for imported basil. Between January 10 and January 21, 1994, MRI issued fifteen separate purchase orders for shipments of basil at $6.25 per pound, and Brookside filled each order and invoiced MRI at that price. MRI paid all these invoices at the higher price. In mid-January, MRI agreed to pay $6.75 per pound for the basil Brookside imported from Mexico and issued sixty-seven separate purchase orders for shipments at that price.

Each of these shipments was filled and paid without protest.

Between March 14, 1994, and May 17, 1994, MRI issued twenty-one purchase orders for basil at $6.75 per pound and issued a check to Brookside for $10,260 in payment for eight of those invoices. Unfortunately for both parties, this check was dishonored by MRI's bank for insufficient funds. Brookside has brought this suit on the claims that Defendant has breached the executory portion of the contract by refusing to accept the minimum amount of basil it agreed to and that Defendant is also liable to Plaintiff for the 3,041 pounds of basil it accepted but did not pay for. MRI contends that no payment is due because Brookside itself breached the contract by raising prices in violation of the contract's express language that no modification would be binding unless it was reduced to written form.

### Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in favor of the nonmoving party. *Id. See also Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In ruling on a Motion for Summary Judgment, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in his favor. Credibility determinations, weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, supra*, 477 U.S. at 255, 106 S.Ct. at 2513–14.

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita, supra*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no *genuine issue for trial*." *Matsushita, supra*, 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original).

### Analysis

#### The Price Modification Issue

The parties in this case vigorously dispute the question of whether they entered into a valid modification of the price of fresh basil leaves. Plaintiff has submitted undisputed affidavit testimony that several oral agreements to modify the original contract price for basil occurred. Within one week of the contract's formation, MRI discovered that the stems on the basil leaves would need to be removed before they could be properly used—a task not required by the original contract. As stated above, MRI's vice-president contacted Plaintiff's general partner, and both parties agreed that Plaintiff would remove the basil stems before shipping the leaves and increase the purchase price by $0.50 per pound.

Both parties were aware that the contract contained a clause forbidding oral modifications of the contract's terms. Section 19 of the contract states:

This Agreement may be modified only by a writing signed by the party against whom or against whose successors and assigns enforcement of the modification is sought.

Consequently, MRI's vice-president agreed to make a notation of the price change on MRI's copy of the original contract. (See Burt Affidavit, Instrument # 7, at 2). Several subsequent price hikes were also agreed to by the parties, and MRI accepted and paid for 21,389 pounds of basil at purchase prices ranging from the original price to $6.75 per pound and accepted, but refused to pay for, an additional 3,041 pounds.[1] Plaintiff currently seeks payment on this 3,041 pounds of basil at the purchase price of $6.75 per pound. MRI contends that no payment is due because Plaintiff itself breached the contract by raising prices in violation of the contract's express language that no modification would be binding unless it was reduced to written form. The Court disagrees.

Neither party in this case has properly pointed out that the contract in dispute falls within the Statute of Frauds under § 2.201 of the Texas Business and Commerce Code. That statute provides that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." Clearly, the original contract between MRI and Brookside meets these requirements.

■ It is a general rule of Texas law that oral agreements that materially modify a written agreement within the Statute of Frauds are not enforceable. Tex.Bus. & Comm.Code Ann. § 26.01; *King v. Texacally Joint Venture,* 690 S.W.2d 618, 619 (Tx. App.—Austin, 1985, writ ref'd n.r.e.); *Dracopoulas v. Rachal,* 411 S.W.2d 719 (Tex.1967). However, not all modifications are prohibit-ed. If the oral changes do not materially alter the underlying obligations, for example, they are not barred. *Horner v. Bourland,* 724 F.2d 1142, 1148 (5th Cir.1984); *Group Hospital Services, Inc. v. One and Two Brookriver Center,* 704 S.W.2d 886, 890 (Tx. App.—Dallas, 1986, n.w.h.). Second, the Texas Supreme Court has adopted the doctrine of promissory estoppel in some cases to forbid reliance on the Statute of Frauds as a defense to the validity of oral agreements. In specific, the Court has held that where one party reasonably relies on the oral promise of another to reduce an oral agreement to writing, the failure to create such a writing will not prevent the relying party from taking the modification out of the Statute of Frauds.[2] *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 937 (Tex. 1972); *see also, Foster v. Mutual Savings Assoc.,* 602 S.W.2d 98, 101 (Tx.App.—Ft. Worth, 1980, n.w.h.).

■ Finally, both parties in this case have also failed to note that Texas has adopted an exception to the Statute of Frauds contained in the Uniform Commercial Code. Sections 2.201(c) & (c)(3) of the Tex.Bus. & Comm. Code state in part that:

(c) A contract which does not satisfy the requirements of Subsection (a) [the general Statute of Frauds provision] but which is valid in other respects is enforceable

. . . .

(3) with respect to goods for which payment has been made and accepted or which have been received and accepted.

Thus, an oral modification that would itself form a binding contract in the absence of Statute of Frauds considerations can be binding on the parties to a sale of goods over $500 insofar as specific goods have been received and accepted. *See* Tex.Bus. & Comm. Code § 2.209.

---

1. MRI originally tendered payment on this series of shipments, but its bank dishonored the check for insufficient funds.

2. The Court specifically invoked both §§ 90 and 178, comment F of the Restatement, Contracts. Section 178, comment F reads:

Though there has been no satisfaction of the Statute, an estoppel may preclude objection on that ground in the same way that objection to the nonexistence of other facts essential for the establishment of a right or a defence may be precluded. A misrepresentation that there has been such satisfaction if substantial action is taken in reliance on the representation, precludes proof by the party who made the representation that it was false.

The Court finds that a valid oral modification of the contract between MRI and Brookside occurred on both estoppel and statutory grounds. As stated above, it is undisputed that the parties agreed to alter the purchase price of the basil leaves. On each occasion, MRI issued separate purchase orders and Brookside filled each order and invoiced MRI on the price. In each case, MRI paid the invoiced price without protest. At the time the first price modification occurred, MRI's vice-president and Brookside's general partner discussed whether or not they needed to redraw the contract to account for the price changes in light of the fact that the contract did not allow for oral modifications. It is undisputed that MRI's vice-president assured Plaintiff that he would make a notation of price changes on MRI's copy of the contract and that this notation would be sufficient. (See Burt Affidavit, at 2).

The Court finds that such behavior clearly brings these parties within the estoppel theory adopted by the Texas Supreme Court in *"Moore" Burger*, 492 S.W.2d at 937. The promised notation would have constituted a valid written modification of the contract's terms. A valid writing under the Statute of Frauds requires only "some writing" signed by the party against whom it is to be enforced, namely, MRI. Tex.Bus. & Comm.Code § 2.201(a). In addition, given that the intent of the oral agreement to modify the written form of the contract was clearly designed to bring it within the controlling language of the contract, Plaintiff could have reasonably relied on Defendant's implied promise to initial or sign the price change to indicate its intent to adopt the change; without such an implied promise, MRI's agreement to alter the written price terms would have been a mere fraud on the Plaintiff. Comment 6 to § 2.201(a) makes clear that such a writing need not be delivered to any other party; MRI could have made the notation on its signed copy of the contract and retained possession of it. It is also clear that MRI's promise to do so induced Brookside Farms to continue shipping basil leaves at the agreed price changes.[3]

Based on these actions, the Court finds that MRI cannot now invoke the no-oral-modification clause of the contract to bar Plaintiff's claim that a valid modification occurred in this case. To do so would be to reach the inequitable result that thousands of dollars could change hands over an extended period of commercial dealings between the parties, during which the Defendant knowingly and wilfully refrained from acting on the promise that induced the Plaintiff to continue shipments and then object to the course of dealing only when it has issued a bad check. The Court notes that the Uniform Commercial Code, which governs the transaction in question, has codified the contractual duty of good faith and fair dealing in commercial settings like the one presently before the Court. Tex.Bus. & Comm.Code § 1.203 provides that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Where the party is a merchant, its standard of good faith performance requires honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. *Adolph Coors Co. v. Rodriguez*, 780 S.W.2d 477, 481 (Tx.App.—Corpus Christi, 1989, writ denied).[4] For the Court to allow Defendant to invoke the no-oral-modification clause after MRI itself induced and participated in the extended course of action it now complains of would be to convert the sale of basil leaves into a "basil sale

---

3. Mr. Burt's affidavit states that MRI promised to make the price change notations in regards to the first $0.50 per pound price increase. The Court notes that Burt does not specifically state that the parties agreed to alter the contract with each subsequent price change. Nevertheless, given the sophistication of the parties involved in this case and their extended course of conduct with one another, it is entirely reasonable to expect that, once having promised to make such changes, and having acted on these changes by shipment and subsequent payment, Plaintiff could have relied on MRI's initial promise to make a written notation to allow their commercial dealings to go forward.

4. The Court realizes, of course, that the duty of good faith and fair dealing under § 1.203 does not state an independent cause of action. Rather, it is designed to make an agreement's promises effective and defines other duties which grow out of specific contractual obligations. *See id.* at 482.

carcinoma" that would devour all reasonable commercial standards of behavior between merchants.

■ The Court also finds that a valid modification of the contract's price terms occurred on statutory grounds. As stated above, oral modifications to contracts within the Statute of Frauds are generally forbidden. In addition, the Texas Business and Commerce Code specifically provides that signed contracts that exclude modifications that are not in the form of signed writings are valid in this state. Tex.Bus. & Comm. Code § 2.209(b). Nevertheless, comment 4 to § 2.209 clearly states that such provisions do *not* limit the "actual later conduct" of parties that have entered into non-written modifications, despite a contract's provision that all modifications must be in writing. In this case, it is undisputed that the "actual later conduct" of these parties involved the order, shipment, and acceptance of 24,430 pounds of basil leaves, 3,041 pounds of which were paid for by a bad check on MRI's part.

Nevertheless, MRI argues that under the contract's "no waiver" clause, it did not waive its right to insist on the contract's initial terms and that, therefore, it now continues to have the right to demand that all modifications to this contract have been in writing to be valid. The Court disagrees.

Section 21 of the contract in question states:

> The failure of either party to this Agreement to demand full performance of any of its provisions by the other party shall not constitute a waiver of performance unless the party failing to demand performance states in a writing signed by party that the party is waiving that performance. The waiver of any breach of any of the provisions of this Agreement by the parties shall not constitute a continuing waiver or a waiver of any subsequent breach by either party of the same or any other provision of this Agreement.

(Defendant's Motion for Summary Judgment, Instrument # 12, Exhibit A, at 4). The Court agrees with MRI that this "no-waiver" clause protects Defendant from a waiver of the "no-oral-modification" clause of the con-

tract. Indeed, comment 4 of § 2.209, quoted above, explicitly relies on the theory that "later conduct" of the parties to a contract "waives" contractual obligations. By agreeing that a failure to demand full performance does not give rise to a waiver, the parties in this case have effectively agreed to their own private Statute of Frauds for modifying the contract. As comment 3 of Tex.Bus. & Comm.Code § 2.209 states, agreements to modify a contract's terms only in written form "permits the parties in effect to make their own Statute of Frauds as regards any future modification of the contract...." Like the general Statute of Frauds, § 2.209(b) is designed "to protect against false allegations of oral modifications." *Id.*

■ However, this does *not* protect MRI under these facts. Indeed, in one sense it destroys MRI's entire case, for if the failure to object to full performance reserves the right to demand such performance, then Brookside's failure to object to MRI's initial request for de-stemmed leaves reserves Plaintiff's right to demand full performance of the original contract's terms, which apparently allowed basil to be shipped with stems still attached. More importantly, however, the private Statute of Frauds provision of the contract must be analyzed under the rules otherwise applicable to general Statute of Frauds issues, and under this analysis, the Court finds that the parties have entered into an effective agreement for those items Brookside shipped and MRI received and accepted.

Sections 2.201(c) and (c)(3) of the Texas Business and Commerce Code provide:

> (c) A contract which does not satisfy the requirements of Subsection (a) [governing the Statute of Frauds] but which is valid in other respects is enforceable
>
> . . . .
>
> (3) with respect to goods for which payment has been made and accepted or which have been received and accepted

This provision also governs the private Statute of Frauds contained in the contract before the Court. Assuming *arguendo* that the agreement between MRI and Brookside to modify the contract's terms did not meet the writing requirements of § 2.201(a), § 2.201(c)

operates to bring the oral agreement within the Statute with respect to those goods MRI actually received and accepted, that is, the 24,430 pounds of basil Brookside shipped, including the 3,041 pounds of unpaid-for basil leaves. *See Bagby Land and Cattle Co. v. California Livestock Commission Co.*, 439 F.2d 315, 317 (5th Cir.1971) ("receipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists."). Under the specific language of § 2.201(c), the new contractual price terms were not made enforceable as to future shipments of basil by Brookside, but they are enforceable as to the 3,041 pounds shipped under the agreed price of $6.75 per pound.[5]

For all these reasons, the Court finds that Plaintiff's Motion for Partial Summary Judgment is **GRANTED** on the claim that MRI is liable to Brookside for $20,526.75 in payment for the 3,041 pounds of basil accepted but not paid for.

 Plaintiff also claims that MRI's refusal to accept and pay for the minimum amount of basil it agreed to buy in its requirements contract with Plaintiff constitutes a breach of contract, with the resulting damages to be determined at trial at a later date. In response, MRI claims that it was relieved of any obligation to purchase basil by Brookside's demand for higher prices than provided for in the contract. Having already decided that Plaintiff's price increases were legally justified, the Court now finds that for the same reasons articulated above, Brookside did not breach its contractual obligations and that MRI is liable for a material breach of its obligation to purchase a total of 91,000 pounds of basil from Plaintiff. Consequently, Plaintiff's Motion for Partial Summary Judgment is **GRANTED** on this point.

 Finally, Plaintiff has also alleged that MRI has violated the Unfair Conduct provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499b(4), which provides that a "dealer" is liable for "unfair conduct," which includes refusing to promptly pay for a perishable agricultural commodity and rejecting any shipment of a perishable agricultural commodity which a dealer has contracted to buy.[6] *See American Fruit Purveyors, Inc. v. United States*, 630 F.2d 370 (5th Cir.1980), *cert. denied*, 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 197 (1981); *Cove Valley Packers, Inc. v. Pilgrim Fruit Co.*, 297 F.Supp. 200, 202 (D.Mass.1969). This claim is essentially redundant to the contractual liability issue already decided, and for the same reasons articulated above, the Court finds that Plaintiff's Motion for Partial Summary Judgment on this issue is **GRANTED** and that MRI is liable to Plaintiff in the amount of $20,526.75. However, Plaintiff's Motion for attorney's fees under PACA in an amount to be determined at trial on the remaining issues in this case is **DENIED.**

### Conclusion

For all of the reasons stated above, the Court finds that Plaintiff's Motion for Partial Summary Judgment is **DENIED** as to any claim for attorney's fees and is **GRANTED** as to the claims that MRI breached the executory portion of the parties' contract, is liable in the amount of $20,526.75 for the payment of 3,041 pounds of basil accepted but not paid for, and that MRI is liable under the Perishable Agricultural and Commodities Act. For the same reasons, Defendant's Motion for Summary Judgment is **DENIED** on all counts, including its counterclaim that MRI is entitled to recover overpayments from Plaintiff for the amounts it paid for basil. Defendant's counterclaim for overpayment is also hereby **DISMISSED WITH PREJUDICE.** All relief not specifically

---

**5.** Because of the general paucity of relevant Texas authority presented in the instant Motions, the Court does not rule on the question of whether sufficient written materials are present in this case to bring the oral agreements out of the Statute of Frauds. The Court notes, however, that purchase orders and invoices were generated for every shipment of basil made and that other courts have found such materials sufficient to satisfy the Statute of Frauds. *See Brochsteins,*

*Inc. v. Whittaker Corp.*, 791 F.Supp. 660, 661 (S.D.Tex.1992).

**6.** The parties in this case have stipulated that fresh basil is a perishable agricultural commodity. In addition, it is clear that Defendant is a "dealer" under the PACA. (See Plaintiff's Motion for Partial Summary Judgment, at 11).

granted herein is also **DENIED.** All parties are to bear their own taxable costs incurred in this case to date. It is further **OR-DERED** that the parties file no further pleadings in the matters determined in this Order, including motions to reconsider and the like. Instead, they are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**