VALLEY REGIONAL MEDICAL
CENTER, Plaintiff,

v.

Phillip G. WRIGHT, M.D.,
Defendant/Third–Party
Plaintiff,

v.

Columbia HCA Healthcare
Corporation, Third–
Party Defendant.

Civil Action No. B–99–171.

United States District Court,
S.D. Texas,
Brownsville Division.

Nov. 26, 2001.

William Robert Gault, Thomas Sullivan, Brin & Brin, Brownsville, TX, for plaintiff/counter-defendant.

George R. Neely, Attorney at Law, Houston, TX, Christopher Herbert Boswell, Stapleton Curtis et al, Harlingen, TX, for defendant/third-party plaintiff.

Carlos A Mattioli, Shannon Martin et al, Houston, TX, for third-party defendant.

## MEMORANDUM OPINION

BLACK, United States Magistrate Judge.

Pending before the Court are Defendant/Third–Party Plaintiff's Phillip G. Wright, M.D., ("Dr.Wright") Motion for New Trial, or in the Alternative, to Modify Judgment (Docket No. 103), Dr. Wright's Motion to Stay Execution or Enforcement of Final Judgment Pursuant to Fed. R.Civ.P. 62(b) (Docket No. 104), Dr.

Wright's Response to the Court's *Sua Sponte* Summary Judgment (Docket No. 108), and Dr. Wright's Motion to Compel Responses to Request for Production and to Compel Answers to Deposition Questions (Docket No. 69). After careful consideration of all the issues, the Court is of the opinion that all these motions should be **DENIED**.

### STANDARD OF REVIEW FOR MOTION FOR NEW TRIAL

"Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory." *Simon v. U.S.*, 891 F.2d 1154, 1159 (5th Cir.1990) (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986). Under the Rule 59(e) standard

> [T]he court has considerable discretion in deciding whether to reopen a case ... That discretion, of course, is not limitless ... [t]wo important judicial imperatives clash: The need to bring litigation to an end and the need to render just decisions on the basis of all the facts. The task of the district court in such a case is to strike the proper balance between these competing interests.

*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990).

### A. Valley Regional Failed to Properly Plead a Suit on a Sworn Account; Therefore Summary Judgment was Improperly Granted on this Ground

■ In his motion for new trial, Dr. Wright correctly points out that this action is not a suit on a sworn account. Tex.R. Civ. P. 185, governing suits on accounts, requires a party to file a petition "...

supported by ... affidavit [stating] to the effect that such claim is within the knowledge of (the) affiant, just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed." TEX.R. CIV. P. 185. In its original petition, Valley Regional only pleaded breach of contract; it did not allege that this was a suit on a sworn account and the petition was not supported by affidavit. (*See* Dr. Wright's Motion for New Trial, Exhibit A, Docket No. 103). Moreover, in its summary judgment motion (Docket No. 88), Valley Regional stated that its petition was based on breach of contract. At no time did Valley Regional file an amended petition in order to raise a sworn claim. Valley Regional did not properly plead a sworn account under Rule 185, and thus, granting summary judgment on this ground was improper.

### B. Valley Regional is Entitled to Summary Judgment on its Breach of Contract Claim.

■ The only other ground upon which Valley Regional could have prevailed in its summary judgment motion was for breach of contract. The essential elements of a breach of contract action are: (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach. *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex.App.-Houston [1st Dist.] 2001). Dr. Wright countersued Valley Regional for breach of contract and argues that there are genuine issues of material fact with respect to Valley Regional's performance of its duties under the Physician Assistance Agreement ("PAA"). He also contests the amount owed to Valley Regional and asserts that he is entitled to any setoff damages as a result of Valley Regional's alleged breaches.

While Valley Regional pleaded waiver as an affirmative defense in its answer, it did not raise waiver in its summary judgment motion in response to Dr. Wright's breach of contract counterclaim. In its Memorandum Opinion (Docket No. 101), this Court, *sua sponte*, held that Dr. Wright waived any genuine issues of material fact with respect to Valley Regional's compliance with the terms of the contract because Dr. Wright failed to provide a notice of an intent to terminate upon Valley Regional's alleged breach as required by the contract.

█ Dr. Wright specifically alleged that Valley Regional breached Sections C.1,[1] C.3,[2] and C.4[3] of the PAA. As discussed in the Memorandum Opinion (Docket No. 101), sections C.1 and C.3 are within the scope of Section G.4[4]—that is, a single breach of these provisions is a ground for termination at the option of Dr. Wright. Section C.4 falls within the scope of Section G.3[5]—that is, while a single breach of this provision is not grounds for termination, a second breach is. Because breaches of these provisions are considered "material"[6] under the contract, Dr. Wright had the election to terminate the agreement. Regardless of whether Dr. Wright decided to terminate the agreement, Section G.5 states that:

> *[i]n any event,* a non-breaching party must declare, in writing, an intent to terminate within sixty (60) days of the alleged breach. The *failure to so declare shall constitute a waiver* of all right to terminate the Agreement or *to any remedies provided by law for such a breach.* [Italics added.]

Once Dr. Wright first recognized that Valley Regional failed to comply with one of these provisions, he was obligated to provide notice of an intent to terminate the agreement in order to preserve any rights to remedies he might have had under law.

1. **[C.1]** *Commitment.* Generally, Hospital expresses its corporate commitment to the development of a heart center at the Hospital, and to take such actions as are reasonably necessary to assure that such a center is developed, whether or not those actions are specifically set forth below.

2. **[C.3]** *Directorship.* Upon approval by the Hospital, the Physician will request and make such adjustments among support staff and equipment as to assure the smooth and efficient operation of surgical procedures. In this regard, the Hospital shall encourage the Medical Staff to establish a separate department, and shall appoint the Physician as Director of Cardiac Surgery.

3. **[C.4]** *Promotion.* Upon approval by Physician, the Hospital shall aggressively publicize its heart program in the community and surrounding area to the general public and specifically to primary care and other referring physicians, prominently featuring the Physician as cardiac surgeon.

4. **[G.4]** *Single Breach Grounds for Termination.* A single breach of the following terms of this Agreement may, at the option of the nonbreaching party, be a basis for the termination of this Agreement: for the Physician—Section B.1., 2., 3. and 3.c; for the Hospital—Section C.1., 3., 4., 6. and Section D.

5. **[G.3]** *Single Breach Not Grounds for Termination.* A single breach of the following terms of this Agreement shall not be grounds for termination of this Agreement: by the Physician—Section B.3.a., b., d. and f.; by the Hospital—Section C.2., 4., 7., 8. and 9[.] A second breach of the same provision shall be a basis for the nonbreaching party, at its option to terminate the Agreement, as set forth in Section F[.]

6. Section F.2 of the Physician Assistance Agreement provides:

   > **[F.2]** *Material Breach.* In the event of an *uncured, material breach* which is unexcused by the nonbreaching party, all *within the meaning of Section G,* below, a nonbreaching party may terminate this agreement upon thirty (30) days written notice to the other party at any time during the term of this Agreement. [Italics added.]

Thus, *to preserve his rights to sue for breach* under the contract, he had to provide notice of an intent to terminate the agreement. Dr. Wright failed to provide any notice of an intent to terminate, and pursuant to Section G.5, this constituted a waiver. These are the terms to which the parties agreed. The terms of the contract and their meaning have the utmost importance, and the agreement must be read to give meaning to the parties' underlying intent. *Borders v. KRLB, Inc.*, 727 S.W.2d 357, 359 (Tex.App.-Amarillo 1987, *writ ref'd n.r.e.*). The rights and remedies with regard to a breach may be altered or waived by agreement of the parties. In this case, the parties determined their respective rights by including a waiver provision that controls in instances when either party is in breach.

Furthermore, there is no genuine issue of material fact as to the amount allegedly owed to Valley Regional. In its Memorandum Opinion (Docket No. 101), this Court held that Section F.3 [7] of the PAA provided the appropriate method to determine Valley Regional's damages. Under this Court's interpretation of the contract, a breach committed by Dr. Wright caused the agreement to terminate prior to the end of the contract term.

Dr. Wright argues that Section F.3 does not apply because the contract did not terminate prior to the end of the contract term in May 1995. To support his argument, Dr. Wright points to the tolling agreement the parties entered into in which they stipulated that as of April 28, 1999, the statute of limitations had not yet run on Valley Regional's breach of contract claim. Thus, Dr. Wright claims the PAA did not terminate for breach during the term of the contract, and consequently, he should not be liable for breach of contract damages. Because Valley Regional did not exercise its right to sue on the contract until the end of the contract term, Dr. Wright claims that Section D.4 [8] re-

---

7. **[F.3]** *Consequences of Breach.* In the event of termination as a result of breach,

> (a) The Physician shall be in breach if he fails to carry out, at any time during the full length of time agreed upon in Section 2 or elsewhere herein, any of the obligations or duties set forth in this Agreement. Upon the first breach by the Physician, the Physician shall have 30 days from the date of written notice in which to cure the breach to the Hospital's satisfaction, after which time the Agreement will terminate unless the Hospital agrees that the breach has been properly cured. Such agreement will not be unreasonably withheld. Upon subsequent breach of any sort by the Physician the Agreement will immediately terminate without notice. Upon termination for breach by the Physician the Agreement will immediately repay in full all amounts paid to him or on his behalf under this Agreement, together with interest hereon at the rate of 8% per annum from the date of each payment by the Hospital. In no event shall this repayment obligation be pro-rated based upon the length of time the Physician has conducted the Practice or otherwise.

> Such termination and repayment shall be in addition to and not in lieu of any other remedy the Hospital may have as a result of the Physician's breach of this Agreement.

8. **[D.4]** *Final Repayment.* Within 30 days following the end of the Guarantee Period, the Hospital shall calculate the Physician's total Gross Receipts for the Guarantee Period, the total amounts paid by the Hospital during the Guarantee Period, and the total amounts already repaid by the Physician on a monthly basis, in order to determine whether any amounts are owed to either party. If the total amount advanced by the Hospital, minus repayments already made by the Physician, is *less* than the amount to which the Physician was entitled under Section D.1, the Hospital shall pay the balance to the Physician within 45 days of the end of the Guarantee Period. If the total amount advanced by the Hospital, minus repayments already made by the Physician, is *more* than the amount to which the Physician was entitled under Section D.1, the Physician shall repay the excess to the Hospital within 45 days of the end of the Guarantee Period[.]

garding final repayment is the operative provision.

■ Dr. Wright's analysis is faulty. In a letter dated February 9, 1999, counsel for Valley Regional, William Gault, informed Dr. Wright's then-lawyer George Neely that a payment plan needed to be arranged between the parties "... before May (1999) or (the parties would have to) enter into a tolling agreement concerning the statute of limitations." Mr. Gault's letter indicates that as of February 9, 1999, the parties recognized that the end of the contract term was in May 1995. Moreover, the parties were aware that they needed to enter into a tolling agreement *prior to* May 1999 because the cause of action accrued *before* the end of the contract term. Indeed, the romance between Dr. Wright and Valley Regional had deteriorated as a result of the alleged breaches committed by both parties months before the contract had completed its term. Dr. Wright did not submit any gross receipts during the last five months of the contract term, and Valley Regional apparently made no monthly guaranteed payments.

■ The tolling agreement ultimately has no bearing on which provision of the contract governs the appropriate measure of damages. Section F.3 of the Physician Assistance Agreement describes breach of contract damages. Section D.4 describes the final repayment formula. According to the rules of construction, this court must give effect to the intentions of the parties as expressed in the instrument *at the time they entered the contract. See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). At the time that Valley Regional and Dr. Wright entered the contract, it is unreasonable to assume that the parties contem-

plated Section D.4 as the provision measuring damages in the event that Dr. Wright committed a breach. There is no mention of "breach" in Section D.4, and it is not located within the provisions that discuss breach. Valley Regional has alleged that Dr. Wright committed a breach, and the applicable provision governing the measure of damages is Section F.3.

### C. The Court, Sua Sponte, Properly Granted Summary Judgment to Valley Regional on the Ground that Dr. Wright Failed to Raise a Genuine Issue of Material Fact that Valley Regional Fraudulently Induced Him to Enter into the PAA in 1993.

■ To prove that he was fraudulently induced to enter into the PAA in 1993, Dr. Wright must prove that Valley Regional made (1) a material representation; (2) which was false; (3) which either was known to be false when made or was asserted without knowledge of the truth; (4) which was intended to be acted upon; (5) which was relied upon; and (6) which caused injury. *Shaboon v. Duncan,* 252 F.3d 722, 735 (5th Cir.2001). A promise of future performance constitutes fraud only "... when made with the intention, design and purpose of deceiving, and with no intention of performing the act." *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.,* 88 F.3d 347, 359–60 (5th Cir.1996) (quoting *Airborne Freight Corp. v. C.R. Lee Enters., Inc.,* 847 S.W.2d 289, 294 (Tex.App.-El Paso 1992, *writ denied* )). There is no summary judgment evidence showing that the statements made by Valley Regional relating to the execution of the PAA in 1993 were known to be false or were asserted without knowledge of their truth at the time they were made. This Court rejects Dr. Wright's fraudulent inducement claim.

**D. Granting HCA's Motion for Summary Judgment Was Proper, and this Court, Sua Sponte, Properly Granted Valley Regional Summary Judgment with respect to the Negligent Misrepresentation, Fraud, and Breach of Contract Counterclaims Raised by Dr. Wright Based on the Representations Made to Him at the Dallas Meeting in November 1998.**

■ Granting HCA's motion for summary judgment was proper because an agreement in which Valley Regional would solicit and review the applications submitted by interested surgeons on staff for the position of Director did not amount to a *clear and definite* offer to appoint Dr. Wright as Director and to close the cardiovascular surgery services program. Whether an offer was made is based on an objective standard of what the parties said and did and not on their subjective state of mind. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex.App.-Houston [14th Dist.] 2000, *rehearing overruled* ).

■ Dr. Wright contends that, at the very least, the representations made to him at the Dallas meeting in November 1998 establish a negligent misrepresentation cause of action against HCA and Valley Regional. Texas courts recognize the common law cause of action for negligent misrepresentation as set forth in the Restatement (Second) of Torts § 552 (1977). *See Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991). The elements of a negligent misrepresentation claim are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying

on the representation. *Id.* Moreover, the damages compensable for negligent misrepresentation are limited to "... the difference between the value of what [the plaintiff] has received in the transaction and its purchase price or other value given for it; and ... pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation." *Id.* (quoting Restatement (Second) of Torts § 552B) (1977)). Benefit-of-the-bargain damages are not recoverable under this common law tort. *Id.*

■ Dr. Wright claims "... that he lost the opportunity to secure $500,000 per year job (sic) on the basis of the representations made by the HCA representatives in Dallas." (Phillip G. Wright's Motion for New Trial, or in the Alternative, to Modify Judgment, Docket No. 103). Dr. Wright essentially seeks to recover benefit-of-the-bargain or loss-of-bargain damages; however, this is insufficient to raise a fact issue regarding pecuniary loss with respect to his negligent misrepresentation claim. To support an action for negligent misrepresentation, a plaintiff must show what he has actually lost—i.e., out-of-pocket damages or pecuniary loss—not loss of what he was promised or loss of the benefit of the contract. *Camp v. Ruffin*, 30 F.3d 37, 38 (5th Cir.1994), *cert. denied*, 514 U.S. 1004, 115 S.Ct. 1314, 131 L.Ed.2d 195 (1995) (relying on *Sloane*, 825 S.W.2d at 442). Out-of-pocket or pecuniary loss damages are measured not by what the plaintiff might have gained had the promise been performed, but by what he has lost. *Id.* Dr. Wright's benefit-of-the-bargain damages are not recoverable.

Moreover, in its Memorandum Opinion (Docket No. 101), this Court concluded that the representations made to Dr. Wright did not constitute representations of existing fact. Dr. Wright has failed to clearly establish that the Court committed

a manifest error of law or fact in determining that the statements made to him at the Dallas meeting were misstatements of existing fact. Dr. Wright did not offer any evidence that the HCA representatives supplied Dr. Wright with false information of an *existing* fact. At most, the representations made to Dr. Wright were "utterances ... as to future, unknown happenings." *Sergeant Oil & Gas Co., Inc. v. Nat'l Maint. & Repair, Inc.*, 861 F.Supp. 1351, 1360 (S.D.Tex.1994).

This case is similar to *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138 (Tex.App.-Houston [14th Dist.] 1999, *no writ*). In *Allied Vista*, Donald Holt sued his former employer Allied Vista, Inc., and its president Thomas Lyon for, *inter alia*, negligent misrepresentation. 987 S.W.2d at 140. According to Holt's testimony, Lyon promised Holt the equipment needed to establish a recycling plant in Louisiana and an annual salary of $55,000 while Holt attempted to start the new plant. *Id.* at 141. The court concluded that this evidence was insufficient to prove the tort of negligent misrepresentation because it was only "... a promise of future conduct." *Id.* (relying on *Airborne Freight Corp., Inc. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 294 (Tex. App.-El Paso 1992, *writ denied*) (holding that a conditional promise of future employment cannot be characterized as a misrepresentation of existing fact)).

■ In the case at bar, it would be a different story if Dr. Wright had been told that he had already been appointed; however, the representations that were made to Dr. Wright only *predicted* Valley Regional's and HCA's *future actions* with respect to improving the hospital's cardiovascular surgery program. Any representations made to Dr. Wright at the Dallas meeting were not misstatements of *existing* fact. At most, they were only a conditional promise of future employment that were subject to the application pro-

cess that the parties agreed would take place. No genuine issue of material fact exists as to whether there was a negligent misrepresentation on the part of HCA representatives. The Court properly granted summary judgment to HCA and Valley Regional with respect to Dr. Wright's negligent misrepresentation counterclaim.

Furthermore, this Court, *sua sponte*, properly granted Valley Regional summary judgment on the remaining counterclaims—i.e, fraud and breach of contract—that arose from the alleged misrepresentations at the Dallas meeting in November 1998. First, no clear and definite offer was made to appoint Dr. Wright Director of Cardiovascular Surgery Services. In his deposition, Dr. Wright testified that the position of Director would be open to other applicants on staff, and he understood that this did not mean that he would be ultimately selected for the position. Wright Deposition, p. 161, 164.

Furthermore, there is no evidence of an actual fraud committed against Dr. Wright as a result of the alleged representations made in November 1998. When asked if he believed Valley Regional or HCA never intended to follow through on the alleged representations, Dr. Wright testified in his deposition

I believe they had an intention to, but did not. I thought they—that when we met in Dallas, that they intended to do all of the things that they said they were going to do.

Wright Deposition, p. 228. In fact, Valley Regional did set up a protocol for applying for the director of cardiovascular surgery, reviewed the applications, but then decided not to choose anyone for the position.

■ Even if an offer had been made at the November 1998 meeting, it is subject to the Statute of Frauds. TEX. BUS. & COMM.CODE ANN. § 26.01 (West 2001). The

Statute of Frauds requires that an oral agreement be in writing if it appears from the terms of the agreement that performance cannot be completed within one year. *Int'l Piping Sys. Ltd. v. M.M. White & Assocs., Inc.*, 831 S.W.2d 444, 451 (Tex. App.-Houston [14th Dist.] 1992, *writ denied*). Appointing Dr. Wright Director of Cardiovascular Surgery Services and closing the cardiovascular surgery services program would have required performance over a period longer than a year; thus, the alleged oral agreement is barred by the Statute of Frauds.

Further, to the extent that the alleged oral agreement to close the cardiovascular surgery services program was a material modification of the Physician Assistance Agreement, it is barred by the Statute of Frauds. TEX. BUS. & COMM.CODE ANN. § 26.01 (West 2001); *Brookside Farms v. Mama Rizzo's Inc.*, 873 F.Supp. 1029, 1033 (S.D.Tex.1995) (holding that where an oral modification materially alters the terms of the contract are subject to the Statute of Frauds). Finally, the PAA provided that the ". . . Agreement may be amended only in writing signed by both parties." There is no evidence that the parties memorialized in writing the alleged oral agreement arising from the November 1998 meeting.

### E. Dr. Wright's Motion to Compel Responses to Request for Production and to Compel Answers to Deposition Questions is Denied.

Dr. Wright's motion to compel responses to request for production and to compel answers to deposition questions is denied. Dr. Wright failed to present a genuine issue of material fact as to whether a *clear and definite* offer to appoint him Director of Cardiovascular Surgery Services had been made at the Dallas meeting, and therefore, Dr. Wright is not entitled to review discovery or interrogate witnesses regarding HCA's or Valley Regional's decision-making process concerning the selection of a director of cardiovascular surgery services.

### F. The Court Properly Awarded Valley Regional Attorney's Fees and Interest.

In his response to the Court's *sua sponte* summary judgment, Dr. Wright asserts that interest and attorney's fees should not be awarded because genuine issues of material fact exist as to whether Valley Regional is entitled to recover on the contract; and, alternatively, there has been no showing as to what portion of attorney's fees should be attributed only to the breach of contract claim separate and apart from the defense of Dr. Wright's affirmative claims. This Court has concluded that Valley Regional is entitled to recover on the contract. Dr. Wright agreed to a waiver provision in the PAA that determined the rights of the parties in the event of a breach. Under the terms of the waiver provision, Dr. Wright was obligated to provide a notice of an intent to terminate the agreement in order to preserve any remedies under law after Valley Regional committed the alleged breaches. He did not do so, and as a result, he waived any right to complain about Valley Regional's compliance at this point. Furthermore, there is no showing that Dr. Wright was fraudulently induced to enter into the PAA. Finally, Valley Regional's counsel Thomas Sullivan has submitted an affidavit showing that the attorney's fees requested reflect the fees and costs "to prosecute this (breach of contract) claim." (Exhibit 1, Valley Regional's Reply to Dr. Wright's Response to the Court's Sua Sponte Summary Judgment, Docket No. 109).