In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00155-CV**
_____

**NANCY BENDER FUHRMAN, Appellant**

**V.**

**DOUGLAS JOHN FUHRMAN, Appellee**

**On Appeal from the County Court at Law No. 6**
**Montgomery County, Texas**
**Trial Cause No. 22-05-05987-CV**

**MEMORANDUM OPINION**

Appellant Nancy Bender Fuhrman, (Appellant or Nancy) appeals a final judgment from a bench trial in a breach of contract and declaratory judgment action filed by her ex-husband, Appellee Douglas John Fuhrman (Appellee or Douglas), to enforce the tax allocation set forth in the parties' 2020 Agreed Final Decree of Divorce (the "Divorce Decree"). The parties disagree on the amount of Nancy's part of the tax liability for 2020. Nancy argues that the trial court erred in finding that Douglas performed his contractual duties under the Divorce Decree and that Nancy

failed to perform her obligation under the Divorce Decree and erred in finding that Nancy owed Douglas $187,244[1] for her share of the 2020 income taxes, plus attorney's fees. We affirm.

Procedural Posture

On May 10, 2022, Douglas filed suit against Nancy for a breach of contract, and seeking a declaratory judgment, and attorney's fees. Nancy filed an Original Answer and Counterclaim against Douglas alleging he breached the contract, and she also sought a declaratory judgment, and requested attorney's fees. The trial court held a bench trial and entered a Final Judgment finding that the Divorce Decree was a valid, enforceable contract; Douglas was the proper party to bring suit for breach of contract; Douglas performed, tendered performance, or was excused from performing his contractual obligations; Nancy breached the contract; and Nancy's breach caused Douglas injury. Nancy was ordered to pay Douglas $187,244 in actual damages and $30,782.58 in attorney's fees, and the court ordered that Nancy take nothing on her counterclaim. The trial court made Findings of Fact and Conclusions of Law and Nancy timely appealed.

---

[1] Nancy's brief complains that the trial court "erred" in finding that Nancy owed "$185,158.50[,]" but the trial court found that Nancy owed Douglas $187,244. So, we assume Nancy is complaining about the trial court's finding that she owed $187,244.

In one appellate issue, Nancy argues that the trial court erred in finding that Douglas performed his contractual obligations under the Divorce Decree and that Nancy owed Douglas $187,244 for her share of the income taxes for 2020. She argues Douglas failed to perform under the Divorce Decree by failing to provide her with a copy of his K-1, she specifically challenges the legal and factual sufficiency of the trial court's Finding of Fact number 16, and she argues the trial court erred as a matter of law in reaching its Conclusions of Law numbers 2, 5, and 9.

## Evidence at Trial

Testimony of Douglas[2]

Douglas testified that he and Nancy were married in June of 1989, and their Decree of Divorce was entered July 10, 2020. Douglas confirmed that other than the last two years of marriage, he held a certified public accountant license and was a partner at Deloitte & Touche (Deloitte). In 2018, he retired from Deloitte where he was a thirty-year partner. Douglas testified that when he retired from Deloitte, he worked in the company's audit division.

According to Douglas, at the time of the divorce, he was already receiving retirement income, and he was concerned about a large tax liability for tax year 2020. Douglas testified that knowing that he and Nancy would owe taxes on the 2020 tax

---

[2] Nancy did not testify at trial and the defense offered no other witnesses.

return, he wanted reimbursement for the taxes that he would owe on money that had already been received from Deloitte. Douglas testified that all the cash that was due for the 2020 earnings from Deloitte had already been paid by the time the divorce was finalized because Deloitte operates on a fiscal year of June 1st through May 31st. Douglas also testified that he addressed this concern during the parties' divorce mediation. According to Douglas, the terms of the mediated settlement agreement the parties reached for the divorce were incorporated into the Divorce Decree. Under the Divorce Decree and after the divorce became final, each party would be separately responsible for taxes on the sale of assets and be separately responsible for taxes on any employment income, Douglas would be responsible for the first $270,000 of the federal income tax owed for tax year 2020, and any remaining tax due after the initial $270,000, would be divided equally between the parties. The Divorce Decree included the following provisions pertaining to tax year 2020:

Treatment/Allocation of Community Income for Year of Divorce

It is agreed and therefore ORDERED that for the purposes of determining income tax liability, the parties agree that Deloitte shall prepare the calendar year 2020 tax return for both parties, and the parties hereby partition pre-divorce income for tax year 2020, as each party's sole and separate property, in a manner determined by Deloitte to reduce the total overall federal income taxed owed for tax year 2020 on the returns of both parties, with the following adjustments:

1. Taxes on the sale of assets after the date of divorce by either party and employment income of each party after the date of divorce are the sole responsibility of that party,

2. Respondent shall be responsible for the first Two Hundred Seventy Thousand Dollars ($270,000.00) of federal income tax owed for tax year 2020, and

4

3. Any amount of federal income tax owed by the parties for tax year 2020 over and above the first Two Hundred Seventy Thousand Dollars ($270,000.00) of federal income tax owed to be paid by Respondent, shall be divided equally between the parties.

For the purpose of the income partitioned for 2020 in accordance with the provisions above, the parties agree that income partitioned to each party is considered that party's sole and separate property beginning January 1 of the calendar year of 2020, with l00 percent of the income, gains, losses, deductions, and credits attributable to or derived.

The parties agree that, for the purposes of determining each party's income tax liability, the property partitioned shall be deemed to have been partitioned to that party and have been that party's separate property as of January 1, 2020, or the date of the property's acquisition, if later.

IT IS ORDERED AND DECREED that for the calendar year 2020, each party shall file a federal income tax return in accordance with the Internal Revenue Code and this Agreed Final Decree of Divorce.

IT IS ORDERED AND DECREED that for the calendar year 2020, each party shall indemnify and hold the other party and the other party's property harmless from any tax liability associated with the reporting party's individual tax return for that year unless the parties have agreed to allocate their tax liability in a manner different from that reflected on their returns.

IT IS ORDERED AND DECREED that each party shall furnish such information to the other party as is requested to prepare federal income tax returns for 2020 within thirty days of receipt of a written request for the information, and in no event shall the available information be exchanged later than March 1, 2021. As requested information becomes available after that date, it shall be provided within ten days of receipt.

IT IS ORDERED AND DECREED that both parties shall cooperate in the preparation of separate income tax returns for 2020 by supplying to Deloitte all information necessary for the preparation of each return in accordance with this decree. Both parties are ORDERED to provide the information to the preparer within ten days of any request for the information[.]

IT IS ORDERED AND DECREED that each party shall pay all fees and charges for the preparation and filing of that party's federal income tax return for 2020.

IT IS ORDERED AND DECREED that each party shall preserve for a period of seven years from the date of divorce all presently existing financial and tax-related documents, information, and records relating to the community and separate estates of the parties and the preparation of the party's federal and, if applicable, state tax returns for 2020. Each party is ORDERED to allow the other party access to these documents, information, and records as reasonably necessary for the determination of that party's tax liability or to respond to an examination or audit by the Internal Revenue Service or other governmental agency within a reasonable time after receipt of written notice from the party requesting access to the documents, information, and records. Access shall include the right to copy the documents, information, and records.

IT IS ORDERED AND DECREED that all payments made to the other party in accordance with the allocation provisions for payment of federal income taxes contained in this Agreed Final Decree of Divorce are not deemed income to the party receiving those payments but are part of the property division and necessary for a just and right division of the parties' estate.

IT IS ORDERED AND DECREED that the parties shall cooperate with each other and exchange all relevant information, notices, and documents in the event of an audit or examination (or notice thereof) of their income tax returns for any period during their marriage through the date of divorce by the Internal Revenue Service or other governmental agency, and each party shall have the right to participate, at that participant party's cost and expense, in that audit or examination individually or by that party's designated representative.

IT IS ORDERED AND DECREED that any assets of the parties not awarded or divided by this Agreed Final Decree of Divorce are subject to future division as provided in the Texas Family Code.

IT IS FURTHER ORDERED AND DECREED, as a part of the division of the estate of the parties, that any liability not expressly assumed by a party under this decree is to be paid by the party incurring the liability, and the party incurring the liability shall indemnify and hold the other party and the other party's property harmless from any failure to so discharge the liability.

6

Pursuant to the Divorce Decree, Deloitte prepared 2020 tax returns for each party. Douglas's taxable income for 2020 was reported as $1,846,112 on Form 1040. The total income paid by Deloitte to Douglas in fiscal year 2020 was $1,798,421. The total tax liability for Douglas on his individual 2020 tax return was $640,317. Douglas paid the total taxes of $640,317. The total tax liability on Nancy's individual 2020 tax return was $251,770, which included capital gains income from her sale of assets after the divorce.

Douglas testified that he notified Nancy of her calculated share of the tax liability she owed to Douglas as provided for in the Divorce Decree. Douglas sent Nancy and her attorney a letter explaining what Nancy owed. Douglas also provided a spreadsheet that detailed

> all the distributions that [had] been received subsequent to the divorce, when it was deposited in the bank account, how much was deposited, how much was withheld, what [Nancy's] portion was, what my portion was, what the tax on it was, and whether there was any differential from the amount originally calculated to the amount that should have been paid.

Nancy's attorney sent Douglas a letter telling him that Nancy did not agree with the amount Douglas requested.

Douglas retained an attorney to represent him in collecting Nancy's share of the 2020 tax liability. Douglas's attorney sent demand letters to Nancy addressed to her attorney; one of which included a copy of the 2020 tax return. Douglas confirmed that the only issue he had in dispute with Nancy was the 2020 tax liability, and he

7

agreed that the relief he was seeking from the trial court was "for the taxes associated with the 2020 tax return and the cash that was received by both [Nancy] and myself … associated with that return." Douglas testified that he was also seeking the "time value of [his] money when it was owed to [him] and wasn't received[]" as well as attorney's fees.

Douglas testified that the income shown on the 2020 K-1 form was the same income shown on the Schedule E form which was attached to the 2020 Tax Return, and it was the income that he and Nancy had received prior to their divorce in July of 2020.[3] Douglas explained that the amount in the bank account had been divided in the divorce and was the basis for the 2020 tax liability language in the Divorce Decree. Douglas noted that any payments he had received from Deloitte after the divorce for the remainder of 2020 were taxable to him in 2021. Douglas testified that pursuant to Deloitte's partnership agreement, he was solely responsible for paying taxes on any retirement payments he received. According to Douglas, throughout the parties' thirty-year marriage, income was never reallocated from one year's K-1 to a prior year for tax purposes.

---

[3] During the trial, the judge ordered a recess to allow Douglas to obtain a copy of his 2020 K-1 from Deloitte and bring it to court the next day and to provide to Nancy.

<u>Testimony of Jennifer Wertz</u>

Jennifer Wertz (Wertz), a certified public accountant with twenty-eight years' experience, was deemed an expert by the trial court without objection. Wertz testified as an expert for Douglas, and she prepared a report stating the tax liability of each of the parties. Wertz testified that the scope of her report only pertained to the 2020 tax liability, and she stated that she had reviewed the tax returns prepared by Deloitte for each party and the Divorce Decree in preparation of the report. Wertz confirmed that she did not review or analyze the income tax returns for accuracy and that they were taken at face value from Deloitte. Wertz testified that "[i]ndividuals have to report what they are given . . . on their W2s, their 1099s and their K-1s." With regard to calculating the tax due, Wertz explained:

> I'm talking about total tax. I'm not talking about payments. Everything that is listed here is tax due and is not tax remitted like the balance due, meaning, it doesn't account for prior payments, it doesn't account for estimated tax payments. It's just tax due.

During cross-examination, Wertz did not agree with Nancy's attorney's proposed calculation or the method Nancy's attorney used for determining the parties' tax liabilities for 2020. Nancy's calculations were erroneous according to Wertz in part because Nancy had included retirement payments received by Douglas in 2020 after the divorce was finalized. In support of her opinion, Wertz explained:

> A. I wouldn't do any of that because, again, it's an inconsistent treatment of income. You treated income a certain way for 30 years. There is a term in accounting -- which I know you've heard of -- which

9

is once could be an error, twice maybe an error, three times it's definitely a counting method. And at year 30 they have an accounting method to where they pick up that revenue recognition in the fiscal year, the year after it's reported.

Q. They had an accounting method filing joint tax returns for 29 years, right?

A. Correct, and that's why --

Q. And year 30 they file separate returns, correct?

A. So --

Q. So now we have a new --

A. You will have a new -- but it is not addressed in the decree to where everything should be addressed. And it's very specific. If you want to do it that way, it should be on page 12.

Q. When a taxpayer files for the first time an individual tax return, are you telling me they cannot change any accounting method when the law is changed?

A. . . . . [T]he law didn't change. The amount they are going to pick up may change, but the law has never changed in this situation.

Q. Okay.

A. So to my understanding, Nancy is not picking up any Deloitte income because Doug[las] is paying 100 percent of the tax.

Q. Okay.

A. So in this situation she is receiving payments net of tax. So there is not actually a tax return to tie that out to see if the income is properly reported on both sides.

Wertz further supported her opinion that the tax year liability for 2020 did not include any retirement payments received by Douglas after the divorce was granted because:

The K-1 represents the activity that the entity is reporting to the individual. Individuals will report that income at the next tax year for them, mainly because the entity has to close their year; prepare the statements; and by the time they issue them, it's the next filing season for individuals. Therefore the marital state is always one year behind on that K-1 recognition.

Final Judgment

Following the bench trial, the trial court made its ruling on December 26, 2023, and set Final Judgment for entry on the court's January 26, 2024 submission docket. Nancy filed a request for findings of fact and conclusions of law on January 10, 2024. The Final Judgment awarded Douglas $187,244 with pre-judgment interest and reasonable and necessary attorney fees of $30,782.58, with costs of court and post-judgment interest, and it ordered that Nancy take nothing on her counterclaims. Nancy filed a second request for findings of fact and conclusions of law. The trial court entered the following Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT**

1. Plaintiff/Counter-Defendant Douglas John Fuhrman (hereinafter "Plaintiff") and Defendant/Counter-Plaintiff Nancy Bender Fuhrman (hereinafter "Defendant") were married on June 16, 1989.

2. In January of 2020, divorce proceedings commenced between Plaintiff and Defendant in *Cause No. 20-01-00129; In the Matter of the Marriage of Nancy Bender Fuhrman and Douglas John Fuhrman in the 418th Judicial District Court of Montgomery County, Texas.*

3. On June 26, 2020, Plaintiff and Defendant attended mediation with Allan J. Reitzer and reached an agreement, memorialized in a binding mediated settlement agreement.

4. On July 10, 2020, the Honorable Judge Tracy Gilbert granted the divorce and signed the *Agreed Final Decree of Divorce* along with several ancillary orders as provided to the Court by the parties. Both Plaintiff and Defendant along with their respective counsel signed the *Agreed Final Decree of Divorce.* (Pl. Ex. 1).

5. The *Agreed Final Decree of Divorce* contained a provision therein which stipulated that the *Agreed Final Decree of Divorce* represented a merger of the Parties' Mediated Settlement Agreement and that if any differences existed between the two documents, the

11

*Agreed Final Decree of Divorce* shall control in all instances. (Pl. Ex. 1).

6. The *Agreed Final Decree of Divorce* states in relevant part:

*Treatment/Allocation of Community Income for Year of Divorce*
*It is agreed and therefore ORDERED that for the purposes of determining income tax liability, the parties agree that Deloitte shall prepare the calendar year 2020 tax return for both parties, and the parties hereby partition pre-divorce income for tax year 2020, as each party's sole and separate property, in a manner determined by Deloitte to reduce the total overall federal income taxed owed for tax year 2020 on the returns of both parties, with the following adjustments:*

1. *Taxes on the sale of assets after the date of divorce by either party and employment income of each party after the date of divorce are the sole responsibility of that party,*
2. *Respondent shall be responsible for the first Two Hundred Seventy Thousand Dollars ($270,000.00) of federal income tax owed for tax year 2020, and*
3. *Any amount of federal income tax owed by the parties for tax year 2020 over and above the first Two Hundred Seventy Thousand Dollars ($270,000.00) of federal income tax owed to be paid by Respondent, shall be divided equally between the parties.*

*For the purpose of the income partitioned for 2020 in accordance with the provisions above, the parties agree that income partitioned to each party is considered that party's sole and separate property beginning January 1 of the calendar year of 2020, with 100 percent of the income, gains, losses, deductions, and credits attributable to or derived.*

*The parties agree that, for the purposes of determining each party's income tax liability, the property partitioned shall be deemed to have been partitioned to that party and have been that party's separate property as of January 1, 2020, or the date of the property's acquisition, if later.*

*IT IS ORDERED AND DECREED that for the calendar year 2020, each party shall file a federal income tax return in accordance with the Internal Revenue Code and this Agreed Final Decree of Divorce.*

*IT IS ORDERED AND DECREED that for calendar year 2020, each party shall indemnify and hold the other party and the other party's property harmless from any tax liability associated with the reporting party's individual tax return for that year unless the parties have agreed to allocate their tax liability in a manner different from that reflected on their returns.*

*IT IS ORDERED AND DECREED that each party shall furnish such information to the other party as is requested to prepare federal income tax returns for 2020 within thirty days of receipt of a written request for the information, and in no event shall the available information be exchanged later than March 1, 2021. As requested, [if] information becomes available after that date, it shall be provided within ten days of receipt.*

*IT IS ORDERED AND DECREED that both parties shall cooperate in the preparation of separate income tax returns for 2020 by supplying to Deloitte all information necessary for the preparation of each return in accordance with this decree. Both parties are ORDERED to provide the information to the preparer within ten days of any request for the information.*

*IT IS ORDERED AND DECREED that each party shall pay all fees and charges for the preparation and filing of that party's federal income tax return for 2020.*

*IT IS ORDERED AND DECREED that each party shall preserve for a period of seven years from the date of divorce all presently existing financial and tax-related documents, information, and records relating to the community and separate estates of the parties and the preparation of the party's federal and, if applicable, state tax returns for 2020. Each party is ORDERED to allow the other party access to*

13

*these documents, information, and records as reasonably necessary for the determination of that party's tax liability or to respond to an examination or audit by the Internal Revenue Service or other governmental agency within a reasonable time after receipt of written notice from the party requesting access to the documents, information, and records. Access shall include the right to copy the documents, information, and records.*

*IT IS ORDERED AND DECREED that all payments made to the other party in accordance with the allocation provisions for payment of federal income taxes contained in this Agreed Final Decree of Divorce are not deemed income to the party receiving those payments but are part of the property division and necessary for a just and right division of the parties' estate.*

*IT IS ORDERED AND DECREED that the parties shall cooperate with each other and exchange all relevant information, notices, and documents in the event of an audit or examination (or notice thereof) of their income tax returns for any period during their marriage through the date of divorce by the Internal Revenue Service or other governmental agency, and each party shall have the right to participate, at that participant party's cost and expense, in that audit or examination individually or by that party's designated representative.*

*IT IS ORDERED AND DECREED that any assets of the parties not awarded or divided by this Agreed Final Decree of Divorce are subject to future division as provided in the Texas Family Code.*

*IT IS FURTHER ORDERED AND DECREED, as a part of the division of the estate of the parties, that any liability not expressly assumed by a party under this decree is to be paid by the party incurring the liability, and the party incurring the liability shall indemnify and hold the other party and the other party's property harmless from any failure to so discharge the liability.*

14

(Pl. Ex. 1).

7. As required by the *Agreed Final Decree of Divorce,* Plaintiff had Deloitte prepare the 2020 tax returns for both parties.

8. By correspondence dated December 29, 2021, and March 13, 2022, Plaintiff requested Defendant's contribution towards the 2020 tax liability as required within the *Agreed Final Decree of Divorce.* (Pl. Ex. 3 & 4).

9. According to Plaintiff's 2020 federal income tax returns and calculations, Defendant's contribution due was $187,244.00.

10. Defendant failed to comply with the terms of the *Agreed Final Decree of Divorce* as she did not remit payment of her proportionate amount of the 2020 tax liability to the Plaintiff.

11. On May 10, 2022, Plaintiff filed suit against Defendant alleging Breach of Contract, petitioning for a Declaratory Judgment, and requesting Attorney's Fees.

12. On June 9, 2022, Process Server, Jeffrey Wilson, served Defendant.

13. On July 1, 2022, Defendant filed an Original Answer and Counterclaims against Plaintiff alleging Breach of Contract, petitioning for a Declaratory Judgment, and requesting Attorney's Fees.

14. On September 25, 2023, the Court commenced the Bench Trial in this matter and recessed trial at the end of the day.

15. On September 26, 2023, the Court concluded the Bench Trial and took the ruling under advisement.

16. During the Bench Trial, the Court admitted Plaintiff's Exhibit 2 without objection from Defendant. Plaintiff's Witness, Jennifer Wertz, CPA, testified that, in accordance with the terms of the *Agreed Final Decree of Divorce* regarding the 2020 tax liability, she calculated Defendant's apportioned contribution to the 2020 tax liability to be $187,244.00. (Pl. Ex. 2).

17. On December 26, 2023, the Court forwarded to both counsel for Plaintiff and Defendant it's written ruling. Therein, the Court set entry of the Final Judgment for January 26, 2024, on the Court's 9:00 a.m. Submission Docket.

18. On January 10, 2024, Defendant filed her *Request for Findings of Fact and Conclusions of Law.*

19. On January 26, 2024, the Court signed the *Final Judgment* which had been "Approved as to Form and Entry Requested" by both counsel for Plaintiff and Defendant.

15

20. On March 6, 2024, Defendant filed her *Notice of Past Due Findings of Fact and Conclusions of Law.*

21. Any Finding of Fact that is a Conclusion of Law shall be deemed a Conclusion of Law.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this case.

2. To recover under a breach of contract claim, a plaintiff must prove the existence of a valid contract, the plaintiff's performance or tendered performance, the defendant's breach of the contract and damages the plaintiff sustained as a result of the breach. *Valley Reg'l Med. Ctr. v. Wright*, 276 F. Supp. 2d 638, 640 (S.D. Tex. 2001) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l Liab. Co.*, 51 S.W.3d 345, 351 (Tex. App.—Houston 1st Dist. 2001[, no pet.])).

3. The *Agreed Final Decree of Divorce* dated July 10, 2020, is a valid and enforceable contract.

4. Plaintiff is the proper party to bring suit for breach of the contract.

5. Plaintiff performed, tendered performance, or was excused from performing his contractual obligations. Plaintiff filed the 2020 tax return in accordance with the contract.

6. Defendant breached the contract.

7. Defendant's breach caused Plaintiff to suffer injury.

8. Under Texas law, Defendant is also liable to Plaintiff for its reasonable and necessary attorney's fees. State law controls the award of attorney's fees "where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). A party ["]may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . (8) an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001; *see also Uretek (USA), Inc. v. Ureteknologia de Mex. S.A. de C.V.*, 589 Fed. Appx. 710, 715 (5th Cir. Tex. 2014) (holding "the prevailing party in a breach of contract suit, was entitled to recover its reasonable attorney's fees").

9. Defendant was required to pay any amount of federal income tax owed by the parties for tax year 2020 over and above the first Two Hundred Seventy Thousand Dollars ($270,000.00) of federal income tax owed. The remaining balance thereafter was to be divided equally between the parties.

16

10. Despite requests for payment from Plaintiff, Defendant failed, refused, or neglected to perform under the *Agreed Final Decree of Divorce*. Defendant did not remit her portion of the 2020 tax liability to Plaintiff.

11. Plaintiff is entitled to recover actual damages from Defendant in the amount of $187,244.00 for Defendant's liability for the 2020 income tax per the *Agreed Final Decree of Divorce*.

12. Plaintiff is entitled to recovery of his reasonable and necessary attorney's fees and costs from Defendant in the amount of $30,782.58.

13. Judicial Notice is taken that post-judgment interest on the actual damages awarded shall accrue at the rate of eight and one-half (8.5%) compounded annually from the *Final Judgment* of January 26, 2024, until all amounts are paid in full.

14. Any Conclusion of Law that is a Finding of Fact shall be deemed a Finding of Fact.

## Standard of Review

In a bench trial, the trial court, as factfinder, is the exclusive judge of the credibility of witnesses and determines the weight of the testimony and is tasked with resolving any inconsistencies in the evidence and drawing inferences from basic facts to ultimate facts. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Macpherson v. Aglony*, No. 09-21-00004-CV, 2022 Tex. App. LEXIS 7105, at *35 (Tex. App.—Beaumont Sept. 22, 2022, no pet). (mem. op.). "When a trial court makes specific findings of fact and conclusions of law following a bench trial and a reporter's record is before the appellate court, the findings will be sustained if there is evidence to support them, and the appellate court will review the legal conclusions drawn from the facts to determine their correctness." *Macpherson*, 2022 Tex. App. LEXIS 7105, at *36 (citing *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d

17

781, 789 (Tex. App.—Houston [14th Dist.] 2016, no pet.)). Findings of fact entered in a bench trial have the same force and dignity as a jury's answers to jury questions. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). In an appeal from a bench trial in which the trial court made findings of fact and conclusions of law, appellants should challenge the sufficiency of the evidence supporting specific findings of fact rather than directing such a challenge generally at the judgment as a whole. *See Thompson & Knight LLP v. Patriot Expl., LLC*, 444 S.W.3d 157, 162 (Tex. App.—Dallas 2014, no pet.); *Carrasco v. Stewart*, 224 S.W.3d 363, 367 (Tex. App.—El Paso 2006, no pet.). "'If the appellant does not challenge the trial court's findings of fact, when filed, these facts are binding upon both the party and the appellate court.'" *Cahill v. Cahill*, No. 09-20-00206-CV, 2022 Tex. App. LEXIS 792, at *18 (Tex. App.—Beaumont Feb. 3, 2022, pet. denied) (mem. op.) (quoting *IKB Indus. v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997) (citing *Wade v. Anderson*, 602 S.W.2d 347, 349 (Tex. App.—Beaumont 1980, writ ref'd n.r.e.)); *see also Ranches at Hamilton Pool Homeowners Ass'n, Inc. v. Red Eagle RH, LP*, No. 08-24-00359-CV, 2025 Tex. App. LEXIS 7394, at *6 (Tex. App.—El Paso Sept. 18, 2025, no pet.) (mem. op.) (quoting *Carrasco*, 224 S.W.3d at 367). In evaluating the legal sufficiency of the evidence to support a finding, we view the evidence in the light most favorable to the finding, indulging every reasonable inference supporting it. *See City of Keller*, 168 S.W.3d at 822. The ultimate test is whether the evidence

18

allows reasonable and fair-minded people to reach the finding under review. *See id.* "A legal sufficiency challenge fails if more than a scintilla of evidence supports the finding." *Tex. Outfitters, Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019). In a factual sufficiency review, we view all the evidence in a neutral light and set aside the finding only if the finding is so contrary to the overwhelming weight of the evidence such that the finding is clearly wrong and unjust. *Betancourt v. Ohmer*, No. 09-18-00121-CV, 2019 Tex. App. LEXIS 323, at *9 (Tex. App.—Beaumont Jan. 17, 2019, no pet.) (mem. op.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). We review conclusions of law de novo. *See Macpherson*, 2022 Tex. App. LEXIS 7105, at *36.

The trial court can believe some, all, or none of a witness's testimony. *See Hometown Motors, LLC v. Jones*, No. 09-18-00466-CV, 2020 Tex. App. LEXIS 9235, at **13-14 (Tex. App.—Beaumont Nov. 25, 2020, no pet.) (mem. op.); *Rivas v. Rivas*, No. 01-10-00585-CV, 2012 Tex. App. LEXIS 412, at *5 (Tex. App.—Houston [1st Dist.] Jan. 19, 2012, no pet.) (mem. op.). A party that did not bear the burden of proof must show that there is no evidence or there is insufficient evidence to support the court's findings when challenging the legal sufficiency of an adverse finding. *Broussard v. Vicknair*, No. 09-21-00391-CV, 2023 Tex. App. LEXIS 9371, at *41 (Tex. App.—Beaumont Dec. 14, 2023, no pet.) (mem. op.).

19

As the appellate court, we are not bound by the trial court's conclusions of law. *City of Beaumont v. Spivey*, 1 S.W.3d 385, 392 (Tex. App.—Beaumont 1999, pet. denied). We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Macpherson*, 2022 Tex. App. LEXIS 7105, at *36 (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *In re Estate of Stafford*, 244 S.W.3d 368, 369 (Tex. App.—Beaumont 2008, no pet.)). Incorrect conclusions of law do not require reversal if the findings of fact support the judgment under a correct legal theory. *See BMC Software Belg., N.V.*, 83 S.W.3d at 794; *Morrell v. Morrell*, No. 09-20-00086-CV, 2022 Tex. App. LEXIS 2101, at *43 (Tex. App.—Beaumont Mar. 31, 2022, pet. denied) (mem. op.); *In re Estate of Stafford*, 244 S.W.3d 368, 369 (Tex. App.—Beaumont 2008, no pet.)

<u>The Only Finding of Fact Challenged by Nancy on Appeal</u>

Nancy challenges Finding of Fact number 16, which provides:

16. During the Bench Trial, the Court admitted Plaintiff's Exhibit 2 without objection from Defendant. Plaintiff's Witness, Jennifer Wertz, CPA, testified that, in accordance with the terms of the *Agreed Final Decree of Divorce* regarding the 2020 tax liability, she calculated Defendant's apportioned contribution to the 2020 tax liability to be $187,244.00. (Pl. Ex. 2).

<u>Conclusions of Law Challenged by Nancy on Appeal</u>

Nancy challenges Conclusions of Law numbers 2, 5, and 9 which provide as follows:

2. To recover under a breach of contract claim, a plaintiff must prove the existence of a valid contract, the plaintiff's performance or tendered performance, the defendant's breach of the contract and damages the plaintiff sustained as a result of the breach. *Valley Reg'l Med. Ctr. v. Wright*, 276 F.Supp. 2d 638, 640 (S.D. Tex. 2001) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l Liab. Co.*, 51 S.W.3d 345, 351 (Tex. App —Houston 1st Dist. 2001[, no pet.))

5. Plaintiff performed, tendered performance, or was excused from performing his contractual obligations. Plaintiff filed the 2020 tax return in accordance with the contract.

9. Defendant was required to pay any amount of federal income tax owed by the parties for tax year 2020 over and above the first Two Hundred Seventy Thousand Dollars ($270,000.00) of federal income tax owed. The remaining balance thereafter was to be divided equally between the parties.

Analysis

Both parties agree they are bound by the terms of their Divorce Decree. The uncontroverted evidence before the trial court showed that Deloitte prepared and filed 2020 income tax returns for Nancy and Douglas as provided for in the Divorce Decree. Douglas testified that Nancy had received the required documentation pertaining to the 2020 taxes because at the time of the divorce, in July 2020, Deloitte had just ended its fiscal year, and Deloitte sent Nancy and Douglas a copy of their respective individual 2020 income tax returns. Nancy did not deny that she received

21

Douglas's letter demanding her payment of the taxes along with a copy of Douglas's 2020 tax return, and a copy of her own 2020 income tax return.

The trial court heard testimony from both Douglas and his expert, Wertz, regarding the significance of Deloitte operating on a June 1st to May 31st fiscal year. Douglas and Wertz testified how that impacted the way in which the parties had filed income tax returns historically and notably for tax year 2020. Douglas and Wertz testified that under the wording of the Divorce Decree, taxes on the sale of assets after the date of divorce by either party and employment income of each party after the date of divorce, would be the sole responsibility of that party. Further, Douglas and Wertz testified that under the Divorce Decree, Douglas was required to pay the first $270,000 of federal income tax for tax year 2020, and then the remaining balance thereafter was to be divided equally between the parties. According to Wertz and Douglas, Nancy's 2020 tax liability to Douglas was then calculated after subtracting the first $270,000 of taxes, and then the remainder of taxes for 2020 being divided equally between the parties. Douglas and Wertz testified that as per the 2020 income tax returns prepared by Deloitte, the total taxes due for that fiscal year totaled $892,087, of which $640,317 was reflected on Douglas's tax return and $251,770 was reflected on Nancy's tax return, with Nancy being responsible for $247,599 in capital gains from her sale of stocks (separate property) after the divorce per the Divorce Decree, and Douglas being responsible under the Divorce Decree

22

for the first $270,000, and that left a remaining tax balance of $374,488. According to the testimony from the witnesses, fifty percent of that remaining tax balance was to be allocated to Nancy pursuant to point 3 of paragraph 1 on page 12 of the Divorce Decree. Douglas testified that he went ahead and paid the full tax amount and then he sent a letter to Nancy informing her that her share of the 2020 taxes was $187,244. Nancy's attorney sent Douglas a letter disputing that amount, and after Douglas's attorney sent demand letters, Douglas filed suit alleging a breach of the Divorce Decree and seeking a reimbursement of the taxes plus attorney's fees.

<u>Legal and Factual Sufficiency of the Evidence<br>As to Finding of Fact 16</u>

If more than a scintilla of evidence exists to support finding 16, the legal sufficiency challenge fails. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (more than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions[]"). We conclude on the record before us that there is more than a scintilla of evidence to support the trial court's Finding of Fact 16.

We reach this conclusion because, as summarized above, the exhibits admitted at trial, including without limitation the Divorce Decree and the 2020 tax return, along with the testimony from Wertz and Douglas, provide some evidence to

23

support the trial court's Finding of Fact 16, that "[d]uring the Bench Trial, the Court admitted Plaintiff's Exhibit 2 without objection from Defendant. Plaintiff's Witness, Jennifer Wertz, CPA, testified that, in accordance with the terms of the *Agreed Final Decree of Divorce* regarding the 2020 tax liability, she calculated Defendant's apportioned contribution to the 2020 tax liability to be $187,244.00. (Pl. Ex. 2)." Based on the record before us, we find the evidence was legally sufficient and we overrule the no-evidence challenge made by Nancy to Finding of Fact 16. *See BMC Software Belg., N.V.*, 83 S.W.3d at 794; *see also King Ranch, Inc.*, 118 S.W.3d at 751 (explaining that more than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions[]").

Next, we examine the challenged finding under a factual sufficiency standard. When an appellant challenges the factual sufficiency of the evidence on a finding, we consider all the evidence supporting and contradicting the finding. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust. *See Betancourt*, 2019 Tex. App. LEXIS 323, at *9. We must be mindful that in a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *See Macpherson*, 2022 Tex. App. LEXIS 7105, at *35 (citing *City of Keller*, 168 S.W.3d at 819-20; *Sw. Bell Tel. Co. v. Garza*, 164

S.W.3d 607, 625 (Tex. 2004)). Accordingly, as long as the evidence falls "within [the] zone of reasonable disagreement[,]" we will not substitute our judgment for that of the factfinder. *See City of Keller*, 168 S.W.3d at 822.

After reviewing the entire record and considering all the evidence supporting and contradicting the trial court's Finding of Fact 16, we conclude the finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Betancourt*, 2019 Tex. App. LEXIS 323, at *9. Even though Nancy argues that Douglas failed to provide her with a copy of the K-1 document for the 2020 tax return, and Nancy argues the expert, Jennifer Wertz, made calculations which failed to give Nancy credit for previous taxes Douglas had deducted from Nancy's share of other funds she received, the trial court had an unobjected-to copy of the Divorce Decree, and the trial court heard testimony from Wertz, a CPA, who testified that, in accordance with the terms of the *Agreed Final Decree of Divorce* regarding the 2020 tax liability, she calculated Defendant's apportioned contribution to the 2020 tax liability to be $187,244. As the finder-of-fact, the trial court could have chosen to believe some, all, or none of the testimony Wertz provided. *See Hometown Motors*, 2020 Tex. App. LEXIS 9235, at **13-14; *Rivas*, 2012 Tex. App. LEXIS 412, at *5. We conclude that the trial court had factually sufficient evidence before it that the amount of Nancy's apportioned

25

responsibility for the 2020 tax liability is $187,244. We overrule Nancy's factual sufficiency challenge to Finding of Fact 16.

Challenges to Conclusions of Law 2, 5, & 9

With respect to Nancy's challenges to Conclusions of Law 2, 5, & 9, in her appellate brief she argues that each of these conclusions are erroneous as a matter of law because Douglas failed to establish the elements necessary to recover on a breach of contract claim. Nancy contends Douglas failed to give her a copy of his K-1 until the time of trial, which she says constituted a breach of contract by Douglas because he had an obligation to give her a copy. She also argues that on cross-examination, she got Wertz to agree she was supposed to have been given credit for the taxes she had already paid, and Douglas failed to meet his burden to show she owed $187,244.

A party may not challenge conclusions of law on grounds of factual insufficiency, but the party may challenge a conclusion of law as incorrect. *BMC Software Belg., N.V.*, 83 S.W.3d at 794. "We review [a] trial court's conclusions of law de novo and will affirm if the trial court correctly drew the legal conclusion from the facts." *Patton v. Echols*, No. 09-22-00334-CV, 2024 Tex. App. LEXIS 7751, at *51 (Tex. App.—Beaumont Oct. 31, 2024, no pet.) (mem. op.) (citing *BMC Software Belg., N.V.*, 83 S.W.3d at 794; *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.)). Erroneous conclusions of law do not require reversal

26

if the reviewing court determines the trial court rendered the proper judgment. *BMC Software Belg., N.V.*, 83 S.W.3d at 794. Conclusions of law must be upheld on appeal if any legal theory that sustains the judgment is supported by the evidence. *Patton*, 2024 Tex. App. LEXIS 7751, at *51.

Conclusion of Law 2[4] merely states the necessary elements of a breach of contract claim. In her appellate brief, Nancy fails to make any argument about why this conclusion is an erroneous statement of the applicable law. Rule 38.1 of the Texas Rules of Appellate Procedure mandates that an appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record. *See* Tex. R. App. P. 38.1(h), (i). The failure to brief, or to adequately brief, an issue by an appellant causes a waiver of that issue on appeal. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018); *Fielding v. Tullos*, No. 09-17-00203-CV, 2018 Tex. App. LEXIS 7136, at *36 (Tex. App.—Beaumont Aug. 30, 2018, no pet.) (mem. op.) (citing *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 n.1 (Tex. 2001)). That said, we conclude

---

[4] Conclusion of Law 2 stated as follows:

To recover under a breach of contract claim, a plaintiff must prove the existence of a valid contract, the plaintiff's performance or tendered performance, the defendant's breach of the contract and damages the plaintiff sustained as a result of the breach. *Valley Reg'l Med. Ctr. v. Wright*, 276 F.Supp. 2d 638, 640 (S.D. Tex. 2001) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l Liab. Co.*, 51 S.W.3d 345, 351 (Tex. App.—Houston 1st Dist. 2001[, no pet.])).

27

Conclusion of Law 2 correctly states the necessary elements of a breach of contract claim. *See Macpherson*, 2022 Tex. App. LEXIS 7105, at \*43 n.4 (citing *Trahan v. Fire Ins. Exchange*, 179 S.W.3d 669, 674 (Tex. App.—Beaumont 2005, no pet.)). Accordingly, we overrule Nancy's challenge to Conclusion of Law 2.

In Conclusion of Law 5, the trial court found "[Douglas] performed, tendered performance, or was excused from performing his contractual obligations. [Douglas] filed the 2020 tax return in accordance with the contract." And, then in Conclusion of Law 9, the trial court states:

> 9. [Nancy] was required to pay any amount of federal income tax owed by the parties for tax year 2020 over and above the first Two Hundred Seventy Thousand Dollars ($270,000.00) of federal income tax owed. The remaining balance thereafter was to be divided equally between the parties.

The trial court made several material factual findings and conclusions Nancy does not challenge. For example, Nancy has not challenged Findings of Fact 8 or 10 wherein the trial court found: " . . . [Douglas] requested [Nancy's] contribution towards the 2020 tax liability as required within the *Agreed Final Decree of Divorce[]*" and "[Nancy] failed to comply with the terms of the *Agreed Final Decree of Divorce* [when] she did not remit payment of her proportionate amount of the 2020 tax liability to [Douglas]." Similarly, Nancy has not challenged other Conclusions of Law, wherein the trial court concluded that "the Divorce Decree was a valid and enforceable contract; Douglas was the proper party to bring suit for

28

breach of the contract; Douglas performed his requirements; Nancy breached the contract; and Nancy's breach caused Douglas injury."

As we stated earlier, an appellant is not entitled to challenge a trial court's conclusions of law for factual sufficiency, but an appellate court may review the legal conclusions drawn from the facts to determine their correctness. *See BMC Software Belg., N.V.*, 83 S.W.3d at 794. In an appeal from a bench trial, we review the conclusions of law de novo and will uphold them if the judgment can be sustained on any legal theory supported by the evidence. *Id.* "If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal." *Id.* For the reasons explained below, we conclude that the trial court did not err in reaching Conclusions of Law 2, 5, and 9, and further that the judgment can be sustained based on Nancy's breach of the Divorce Decree.

Nancy argues that because Douglas did not provide all documentation, he did not perform all his contractual duties. Nancy specifically notes that Douglas did not produce the K-1 tax form that was applicable to the 2020 tax return and information regarding pension payments received by Douglas from Deloitte after the date of the divorce. Nancy's argument relies on her interpretation of facts and evidence either explicitly or implicitly rejected by the trial court. The trial court found that Douglas had performed under the Divorce Decree, and the trial court expressly rejected

29

Nancy's arguments that Douglas had failed to perform under the Divorce Decree and that Douglas had miscalculated her 2020 tax liability. The trial court did not err in concluding that

> [Nancy] was required to pay any amount of federal income tax owed by the parties for tax year 2020 over and above the first Two Hundred Seventy Thousand Dollars ($270,000.00) of federal income tax owed. The remaining balance thereafter was to be divided equally between the parties.

The appellate court's task in construing a contract is to ascertain and give effect to the parties' intentions as expressed in the contract. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). It is true that a material breach by one party to a contract may excuse the other party from its obligation to perform under the agreement. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004). That said, the determination of whether a breach is material will generally be a question of fact for the factfinder. *See Henry v. Masson*, 333 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Here, the trial court was the factfinder and it could have resolved any conflicts in the evidence and could have found that the necessary information that Douglas was required to provide to Nancy for the 2020 tax return preparation was provided, or it could have concluded that even if Douglas failed to provide a copy of the K-1, that failure was not a material breach of Douglas's obligations under the Divorce Decree, and it

could have wholly rejected Nancy's argument.[5] We find that Conclusions of Law 2, 5, and 9 are not erroneous as a matter of law. We overrule Nancy's challenges to Conclusions of Law 2, 5, and 9.

Having overruled Appellant's issue and challenges on appeal, we affirm the trial court's judgment.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on May 16, 2025
Opinion Delivered April 16, 2026

Before Golemon, C.J., Johnson and Chambers, JJ.

---

[5] Douglas testified that the information reported on Schedule E is the same information that is included on the K-1.Wertz also testified that the K-1 information is reflected on the Schedule E to Douglas's 2020 Tax Return, which was given to Nancy.

31